KURN *et al. v.* FONDREN *et ux.*

(In Banc.   Nov. 25, 1940.)

[198 So. 727.   No. 34331.]

Owen & Garnett, of Columbus, **D. W. Houston, Sr. & Jr.**, of Aberdeen, and **E. G. Nahler** and **A. P. Stuart**, both of St. Louis, Mo., all for appellants.

John H. Holloman, of Columbus, for appellees.

**McGowen, J.,** delivered the opinion of the court.

The appellees, J. W. Fondren and his wife, sued the trustees of the railway company for damages because of the loss of their house, garage, and personal property therein, by a fire alleged to have been set by sparks from a locomotive engine of the railway company in its operation near the dwelling of the appellees. The declaration was in two counts: (1) for the value of the property destroyed by fire, under section 6153, Code of 1930; and (2) for the statutory penalty and under section 3422, Code of 1930. By proper pleadings the whole case of the appellees was put in issue by the trustees of the railway company; and on being submitted to the jury a verdict for $1,250 was rendered in favor of the appellees, and judgment entered thereon accordingly; from which judgment this appeal was prosecuted.

The second count of the declaration, as to the statutory penalty, was disposed of by the lower court by a peremptory instruction for the appellant, and is of no further consequence in connection with this appeal.

The essential facts are as follows: Fondren and his wife owned a triangular piece of land abutting the right of way of the railway company, of about 1½ acres, bounded on the west by the railroad tracks and right of way, on the east by the highway, and on the south by a ditch, with the point of the triangle pointing north. The house faced a black-topped highway, No. 12, to the east, while on the west lay the right-of-way, fenced off at a distance of 50 feet from the center of the track; the south boundary consisted of a ditch about 5 feet wide and 5 deep, running east and west, crossing the railroad right-of-way, and filled with a dense growth of sedge grass. The weather had been very dry, no rain having fallen for a long time. The Fondren home was a frame house with a composition roof, on the south side of which were two bedrooms with a bath between, and the garage was a little south and west of the southwest room, and about 4 feet north of the ditch. The garage was about 20 feet south of the dwelling, and not more than 130 feet from the railroad track.

On the morning of October 17, 1938, between 1 and 2 o'clock, Mr. and Mrs. Fondren were awakened by smoke, and found the southwest room to be on fire. The evidence of appellees establishes, as did that of another witness, that when they rushed from the house they discovered that the sedge grass in the ditch had been burned from the right of way east to the garage, and that the fire, as to the house, appeared to have originated in the southwest corner room, the garage being about to fall in already. A strong west wind was blowing from the direction of the railroad right of way toward the house and garage, a little north of west. It was shown by the evidence that the grass in the yard and curtilage had not burned on the east side toward the highway.

Over the objection of the appellant witnesses were permitted to testify that the schedules of the two passenger trains were, that the southbound train passed this point about 11:30 P. M., and the northbound train about 1 A.

M. A night or two before, and a night or two after this fire, and within the week, the engines pulling the passenger trains emitted flaming sparks which flew quite a distance. Some of them fell aflame on Fondren's lot, and also on the lot of his adjoining neighbor, Mr. Hill. The ground between the garage and the railroad right-of-way fence was plowed at these points.

No witness in this case testified to having observed any fire near these premises or in the vicinity at the time in question. On the morning preceding the night of the fire Mr. and Mrs. Fondren had breakfasted at home, and had then left on a visit at 7 o'clock in the morning, returning about dark that evening. No fire had been left burning in the house, and none was lighted on their return, and they retired early.

The evidence for the railroad company showed, as stated, that these passenger trains passed this point, going north and south, at about 12:45 and 11:45 at night, respectively. All the engines used in this passenger service burned oil, being of practically the same type as those in use on the night of this fire, which the railroad company claimed would not emit sparks which would ignite matter. It was testified that there was no heavy draft on the engines of these passenger trains in passing this point, since the grade is practically level; that neither on that night nor on others did the engines emit sparks, as it was customary for the company to "sand out" the flues of the engines to rid them of the soot which collected therein, at a place to the south of Columbus; that at a point about 25 miles north of the place here involved the engines would again be "sanded" to remove the soot, caused by combustion of the oil, from the flues of the smoke stack. In performing the sanding operation, which was done by the foreman, the engineer would increase the draft of the engine to blow out the soot, in which process sparks would be emitted; as they did, also, at stations, when the draft would be heavy in starting the train; which sparks, it was contended, would not

burn a person's hand if they should fall on it, nor would they be carried any distance. However, one witness for the railroad testified that the heat of a spark falling on his hand would barely be felt; and another, that he had seen the sparks blow back from the engine toward the coaches about 120 feet.

All of the employees operating the two passenger trains here in question were examined, with the exception of one engineer who had died, and one conductor who was ill, and could not be found; and other witnesses, also. One of these was a neighbor of the Fondren's living about 150 yards distant, who said he had been aroused by a yell from a human being, and going out on his porch saw that the garage had just caught fire, and that the house was practically burned down. He was somewhat confused as to the distance from where he lived to the home of the Fondrens; said he did not go to the fire to see about his neighbor, but returned to his bed.

The railroad company offered one of its section foremen as a witness, whose testimony was to the effect that shortly after the fire he asked Fondren how it originated, to which the latter replied that he did not know; but that in the southwest room there was rubbish, and a rat might have ignited it with a match—which statement was denied by Fondren.

At the conclusion of the appellee's evidence a motion was made by appellant to exclude it, which motion was overruled by the court. At the conclusion of the evidence for both sides the appellant again made a motion to exclude such evidence, and for the court to direct the jury to find for it; this motion, also, was overruled.

Although the case is argued here on several points, the real questions presented are as follows: (1) Did the court err in refusing a peremptory instruction for the appellant; (2) Did the court err in permitting the testimony objected to, in regard to sparks being emitted from the locomotives of these passenger trains which passed the house between 11:45 P. M. and 1 A. M. on other oc-

casions? We thus state the points involved because after having made a motion to exclude the evidence on behalf of appellees, and at the conclusion thereof, the appellants proceeded to introduce evidence, thereby waiving the objection to the action of the court in refusing to exclude appellees' evidence. Maclin v. Bloom, 54 Miss. 365; Nebhan v. Mansour, 162 Miss. 418, 139 So. 166, 878.

This Court has held that the plaintiff in an action under section 6153, Code of 1930, need not prove negligence on the part of the railroad company, because such company is vested with an insurable interest in the abutting property.

The court below overruled a motion for a new trial, in which the verdict was challenged at every possible point.

The appellees undertook to establish their case by circumstantial evidence; first, there was no other fire shown to have been in that vicinity which could have caused the destruction of Fondren's property on that night. No witness saw sparks emitted from the locomotives of the appellant railroad company at that time — no witness swears to having seen any sparks; and there is no evidence that any other fires had been set out by a locomotive of the company—there is no direct evidence that the fire was started by sparks from a locomotive. The case of appellees turned upon the fact that the fire originated at about 1 foot from the post of the right of way fence of the railroad, adjoining the ditch. The railroad company claimed that by actual measurement the point where the fire ended was about 14 feet from that right of way post; the evidence is undisputed that the wind was blowing "strong" from the west; in other words, from the railroad right of way along the ditch to the garage and the house at the southwest corner. There is no conflict as to the direction in which the wind was blowing. There is conflict as to whether the fire originated first in the garage or in the house, which conflict was submitted to the jury, and resolved in favor of the appellees. So that not only the evidence we have quoted, but all the fair in-

ferences which a jury might reasonably deduce therefrom is to be resolved in favor of the appellees. See Dean v. Brannon, 139 Miss. 312, 104 So. 173.

We think that the jury were warranted in finding from these facts that the reasonable probability was that sparks from the engine of one of the locomotives set fire to the grass in the ditch, and that the wind carried the flames to the garage and house.

The argument on behalf of the appellants eliminates the wind, claiming that if sparks were emitted from the engine, the flame would have set fire to the grass between to garage and the right-of-way fence; that the witnesses did not see any fire originate on the occasions about which they testified. It cannot be assumed by us that grass was growing on the space between the fence and the garage, because the witnesses testified, without contradiction, that this was plowed ground. It was stated that this was a case of first impression in regard to oil-burning engines. The testimony shows that the soot which accumulated in the flue of the engine had been blown out by the operators of the engine—that it was similar to the soot in a lamp chimney, or to that which accumulates in any chimney in a house. The fact that the witness, Hill, found the sedge grass in the ditch, shown by the testimony to be a dense growth, and dry, to have burned from the railroad right-of-way fence, or near it, to the house, in conjunction with the direction from which the wind was shown to be blowing at the time, in our opinion warranted the jury, under the rule adopted in such cases, in finding for the appellee that the fire was set out by sparks from the locomotive on the night of the fire—probably by the locomotive of the northbound train, which passed, as testified, about 1 o'clock A. M.

In this case the jury were left to determine the question at issue from the facts as proved. They could not infer that the fire had been caused by a match thrown from a passing automobile on the highway, to the east of the

house, because the grass was not burned from that direction. We think it is fair to say that there is no evidence which excludes the reasonable probability of a fire having been set by sparks from a passing locomotive; but, on the contrary, that the evidence more strongly tends to show such a probability.

This conflict in the evidence presented an issue of fact to be decided by the jury; and where a case turns upon circumstantial evidence it should rarely be taken from the jury. We do not believe that we are warranted in holding in this case, under the issue of facts above stated, that the determination of the issue should have been taken from the jury by the court. Nor do we believe that the overwhelming weight of the evidence is against the facts as testified to on behalf of the appellees, and the fair inference deduced therefrom. The rule in this state is that when the circumstantial evidence justified the jury in finding that the inference that the fire was set by a railroad locomotive is stronger and more probable than that it was set out from another cause, the question of the fire's origin was for the jury. We think the case is controlled in principal by Gulf, M. & N. R. Co. v. Sumrall, 142 Miss. 56, 107 So. 281, and Illinois Cent. R. Co. v. Thomas, 109 Miss. 536, 68 So. 773; cf. Folsom v. Illinois Cent. R. Co., 116 Miss. 561, 77 So. 604. This is essentially true where it was not incumbent upon the appellees to show negligence on the part of the railroad company; and we are of opinion that such cases cited by the appellants are not applicable to the case at bar.

As to whether or not live sparks emitted by an oil-burning locomotive, and plainly to be seen at night, could set fire to inflammable matter, we think it better for us to follow the conclusions arrived at by other courts on that point. See Viera v. Atchison T. & S. F. R. Co., 10 Cal. App. 267, 101 P. 690; Slaton v. Chicago, M. & St. P. R. Co., 97 Wash. 441, 166 P. 644; Roundtree v. Mt. Hood R. Co., 86 Or. 147, 168 P. 61, and other authorities cited in these cases. We cannot hold, as a matter of law, that it is impossible for sparks from an oil-burning

locomotive to be carried a distance of from 51 to 64 feet, and to set fire to inflammable material. If a spark is perceptible to the hand of a laborer, it is for the jury to say whether or not it is capable of igniting dry sedge-grass; and it was testified by a railroad employee that these sparks could fly a distance of 120 feet, depending on the draft of the engine, and the direction and velocity of the wind,—all of which was before the jury in this case.

Under the holding of this Court in the case of Alabama & V. R. Co. v. Aetna Ins. Co., 82 Miss. 770, 35 So. 304, the evidence of witnesses as to sparks emitted from locomotives passing a given locality at certain hours, within a reasonable time before and after the occasion under investigation, was held to be competent; and in so holding we did not in any manner overrule or pare down the rule announced in Tribette v. Illinois Cent. R. Co., 71 Miss. 212, 13 So. 899.

In the case before us the railroad company carefully demonstrated that the engines operating on the night in question were oil-burners of the same type as other engines operating passenger trains past this locality on the same schedule, and which do emit sparks, according to the testimony of a witness for the railroad company, who said that sparks had been emitted by such an engine on this schedule, both before, and two nights after, the fire here in question. In other words, the evidence shows that they were the same kind of engines, which, as claimed by the railroad company, being oil burners, would not emit sparks at this particular locality. In the Tribette case the railroad company showed by its witnesses what other and different kinds of engines did on different occasions with reference to emitting sparks. The distinction between the Tribette case and the Aetna case is quite marked.

In conclusion we will say that the inference, created by the fact that the wind was blowing from the railroad tracks toward the dwelling on this occasion, the garage was first on fire, the ditch bank covered with bushes and dry sedge, is that these oil-burning engines did emit

sparks in passing this point that night within 30 or 45 minutes before the ditch was burned off and the garage almost consumed; although this is stoutly contradicted by the railroad company.

Affirmed.