JOHNSTON v. CANTON FLYING SERVICES, INC.

In Banc. May 22, 1950.

No. 37506 (46 So. (2d) 533)

Nelson Cauthen, and Barnett, Jones & Montgomery, for appellant.

Ray, Spivey & Cain, and Watkins & Eager, for appellee.

**Hall, J.**

Appellant brought suit against appellee for the recovery of damages on account of the death of her hus-

band, Howard L. Johnston, who was killed in an airplane accident on February 15, 1948. The declaration contains two counts. The first count alleges that the defendant negligently furnished the deceased, who was a student for hire in its pilot's training school, with an airplane which was defective and not reasonably safe because there was a leak in the gasoline gauge which permitted the cabin of the plane to fill with dangerous vapor and fumes as a result of which there was great danger of a fire and explosion in the cabin with probable fatal results to its occupant, and that this condition was known to the defendant, and that by reason of said condition the said airplane did explode and ignite while in flight and fell to the ground and burned Johnston to death. The second count is based upon the doctrine of res ipsa loquitur.

Upon conclusion of plaintiff's evidence the trial court sustained a motion for a directed verdict as to the second count and overruled a similar motion as to the first count. Thereupon defendant's evidence was submitted and the trial court refused a peremptory instruction requested by defendant and submitted the case to the jury upon instructions announcing the rule that the defendant owed the deceased the duty to exercise reasonable care to furnish him a reasonably safe airplane in which to make the flight. The jury returned a verdict for plaintiff in the amount of $12,500, whereupon defendant immediately made a motion for judgment in its favor non obstante veredicto. The trial court sustained this motion on the ground that defendant was entitled to a peremptory instruction and rendered judgment in favor of the defendant, from which plaintiff appeals and contends that the evidence was sufficient to make a case for decision by the jury and that we should reverse the judgment of the trial court and enter judgment here in her favor upon the jury's verdict.

Deceased completed his first course and obtained a private pilot's license before October 22, 1947. Up to

that date he had flown the plane in question on numerous occasions. After that date he had not flown it until the ·day of the fatal accident. He had been working in Jackson and decided to take a course looking toward his obtaining a commercial pilot's license and went back to Canton on the day of the accident to begin this second course. He had not flown a plane since October 22, 1947, and the instructor in charge went up with him for a short trial flight to see that deceased still knew how to properly handle a plane. After he was fully satisfied in that respect they landed the plane and the gasoline tank was then filled and deceased took off alone for a cross country flight which was due to carry him to Jackson, thence to Vicksburg, and thence back to the Canton field.. In a short time thereafter, while the plane was in flight, two different witnesses heard a loud ''pop'' described by one of them as being louder than the back-fire of an automobile, whereupon the plane headed straight down and when it neared the ground it gradually leveled off at a height described as being about the distance of one tree on top of another. · Fire and smoke were pouring from the sides and rear of the plane. It went a distance of about one-half to three-fourths of a mile and crashed. The cabin and rear portion of the plane were burned and the deceased was burned to death without escaping from the cabin. · There was a fire-wall separating the cabin from the motor and the motor showed no signs of fire, all the evidence of fire being behind the firewall.

The windshield and side windows of the cabin were constructed of a material commonly known as plexi-glass. On one side the windows were of the sliding type so that an opening could be made. On the other side they were securely fastened. The windshield and windows were all in place when deceased took off on this flight. Shortly after the crash witnesses made a search of the ground near the point where the loud ''pop'' occurred and found scattered over a wide area numerous pieces of plexi-glass ranging in size from about half a window on

down to minute particles. One of defendant's witnesses testified that there is no doubt that these pieces of plexiglass came from the plane which crashed. A map was seen to blow from the plane before it crashed and it was identified as being the same type of map carried on all planes of the defendant.

From all these facts and circumstances which are not disputed in the record the jury was warranted in finding that the plane crashed and deceased met his death as a direct and proximate result of an explosion and fire in the cabin of the plane. The next question which naturally presents itself is what caused the explosion and fire and whether there were facts from which the jury were warranted in finding that the defendant was guilty of negligence which proximately caused or contributed thereto. This necessitates a review of the evidence in that respect, and we may add that there was little, if any, dispute in any of the material facts.

The machine in question was an Aeronca light cabin plane. The motor fuel was gasoline and was kept in a tank in front of the cabin. This tank was filled through an opening with a screw cover just in front of the windshield. A pipe ran from the tank a short distance toward the rear to the instrument panel just behind the windshield and terminated in a gasoline gauge there located. This gauge had an open face with a glass covering and was automatically operated by a float in the gas tank so that the pilot of the plane could tell at a glance how much gasoline was in the tank. A screw cap held the glass covering in place over the dial, and, according to the evidence of the only licensed airplane mechanic who testified, there should have been a gasket both below and above this glass so as to prevent the escape of gasoline and fumes or vapor from the gasoline tank into the cabin of the plane.

Four witnesses for the plaintiff and two for the defendant testified that the gauge on this plane had been leaking both gasoline and fumes for a considerable length

of time, at least two of them putting it as far back as December 1947. The plane had not been inspected by a licensed mechanic since prior to November 1, 1947, though there was evidence that it was due to be inspected at least twice a week. At the request of appellee two efforts had been made by a student pilot, who was not a mechanic, to stop the leak, but without success. He had put on only one new gasket each time when he should have used two. These gaskets cost five cents each. After these attempted repairs to the gauge it continued to leak, it was common knowledge around the air field that it was leaking, and this was known to at least one of defendant's instructors in charge of its training courses. The leak was much worse when the gasoline tank was full, and it was shown that with a full tank not only the fumes but also pure gasoline would leak around the defective gauge, sometimes emerging in a spurt or spray. On some occasions the cabin had become so impregnated with gasoline vapor that the pilot would become afraid to fly it any further and would bring it back to the field and refuse to use it again. It will be noted that all this evidence dealt with the condition of the plane after Johnston had completed his course and stopped flying on October 22, 1947. There is no evidence that he had any knowledge whatsoever of its condition when he began his fatal flight on February 15, 1948.

It was shown by the testimony of an expert in chemistry that gasoline vapor when mixed with air will explode upon contact with a spark of fire but cannot explode without such contact. Indeed this conclusion is a matter of common knowledge. The evidence discloses that there was an air vent in the metal portion of the walls of the cabin on each side for the purpose of letting air into the cabin from the outside, and that these vents were behind and within not more than three feet of the end of the motor exhaust; it was further shown that the exhaust emitted sparks when the plane was in flight.

In determining whether there was sufficient evidence on the question of defendant's negligence for decision of that issue by a jury two well established principles should be kept in mind. One is that negligence may be established by circumstantial evidence in the absence of testimony by eyewitnesses provided the circumstances are such as to take the case out of the realm of conjecture and place it within the field of legitimate inference, and further in this connection that the causal connection between an agency and the injury sustained need not be shown by direct evidence. 38 Am. Jur. p. 1032, Negligence, Section 333; Palmer v. Clarksdale Hospital, 206 Miss. 680, 40 So. (2d) 582; Bock v. Fellman Dry Goods Co., Tex. Com. App., 212 S. W. 635.

 The other principle is that in determining the question whether defendant is entitled to a directed verdict, the evidence must be treated as proving every fact favorable to plaintiff's case which is established either directly or by reasonable inference. Dean v. Brannon, 139 Miss. 312, 104 So. 173; Bankston v. Dumont, 205 Miss. 272, 38 So. (2d) 721; Kurn v. Fondren, 189 Miss. 739, 198 So. 727; Stricklin v. Harvey, 181 Miss. 606, 179 So. 345.

A case similar in principle to the one here presented is Standard Oil Co. of Kentucky v. Evans, 154 Miss. 475, 122 So. 735, 736. In that case a filling station attendant of appellant in filling the gasoline tank of appellee's automobile permitted the tank to overflow and failed to remove the surplus gasoline. Shortly after appellee drove his automobile away from the filling station the surplus gasoline ignited, causing injuries to appellee and damage to his automobile. The appellant there contended that he was entitled to a directed verdict, but this court rejected the contention with this language: ''Appellant assigns and argues as error the action of the court in refusing to direct a verdict in its favor. Appellant's position is that, although conceding that it was guilty of negligence in overflowing the appellee's car

with gasoline, such negligence was not the proximate cause of the injury complained of, and furthermore, that appellee assumed the risk of injury in driving the car in that condition. Gasoline is a very dangerous agency. It is highly combustible. The overflowing of appellee's car with gasoline was undoubtedly a negligent act on the part of appellant. Whether such negligence was the proximate cause of the injuries which resulted depends on whether appellant should reasonably have foreseen that some injury might result therefrom, not the particular one that did follow. Appellant was charged with the knowledge that gasoline is highly inflammable, and that persons in and around automobiles striking matches for the purpose of lighting cigars, pipes or cigarettes may cause it to ignite, and, in addition, that parts of an automobile sometimes become so heated from use as to ignite inflammable substances in or about the car and burn it in whole or in part. We do not think, therefore, that it would be a straining of the principle of proximate cause to hold that appellant should have reasonably foreseen that the overflow of gasoline in appellee's car might become ignited in some manner, resulting in injury to appellee and damage to his car.''

It will be noted from the foregoing that the court held that whether the negligence in permitting the gasoline to escape was the proximate cause of the injuries and damage was for the determination of a jury, and the court regarded as inconsequential the question as to what agency caused the gasoline to ignite. Likewise, in Mississippi Power & Light Co. v. Thomas, 206 Miss. 201, 39 So. (2d) 759, 40 So. (2d) 597, where natural gas had escaped from a service line and permeated a garage and was ignited from the exhaust of an automobile which plaintiff was operating, the cause of ignition was considered as of little consequence, and it was held that the question of reasonable foreseeability on the part of the defendant was for the jury to determine. And in United Novelty Co., Inc., v. Daniels, Miss., 42 So. (2d) 395, not

yet reported in the State Reports, we held that where defendant required its employee to work in a closed room and use gasoline in cleaning music boxes, the question of its liability for the death of the employee was for the jury, notwithstanding the fact that the fumes were ignited by a rat which ran from the music box underneath a gas heater where its impregnated coat was caused to ignite and it then returned in flames to its original hideout, and we there held that the particular detonating agency was purely incidental. It is well to note that the duty of a master to his servant is the same as the duty of a bailor to his bailee for hire in tort actions.

In the case of Johnson v. Kosmos Portland Cement Co., 6 Cir., 64 F. (2d) 193, 196, laborers were employed to work in repairing a barge in the Ohio River. This barge had been used in transporting oil, and the gases therefrom had not been removed from the hold when the men were put to work on it. A bolt of lightning struck the barge and caused an explosion which killed every one on board. In holding that the facts made out a case of liability against the company the Circuit Court of Appeals for the Sixth Circuit said: "The fault of the respondent consisted in its failure to remove gases from the barge. Their explosiveness presented continuous menace to the men working thereon. Any one of a number of expectable circumstances might have brought about the precise injury which resulted; a lighted match, the flame of the acetylene torch, a heated rivet, a spark produced by friction of a tool or boot, and so on. The danger of the injurious result was ever present, even though the manner in which, or the means by which, such result was brought about may have had in it some aspect of unusualness."

In the case of Brown v. Riverside Coal Co., 143 Iowa 662, 120 N. W. 732, 736, 28 L. R. A., N. S., 1260, the company had stored dynamite and powder in dangerous quantities in the only room provided for its em-

ployees for shelter and for keeping their tools, clothing, and lunches. During a violent rainstorm Brown sought refuge from the elements in this shelter, and while there a violent explosion occurred resulting in his death. It was presumed that the explosion was caused by a bolt of lightning, but there was only remote circumstantial evidence to that effect. In holding the question of the employer's negligence to be for the jury, the Supreme Court of Iowa said: ''If the defendant was negligent in depositing the powder and dynamite in a place where their accidental ignition would necessarily endanger lives of its servants, such negligence would be the proximate cause of the resulting injury, notwithstanding the source of the spark which explodes them be purely accidental or wholly unknown. Tissue v. Baltimore & O. Railroad Co., 112 Pa. 91, 3 A. 667, 56 Am. Rep. 310.''

In the case of Southwestern Portland Cement Co. v. Moreno, Tex. Com. App., 215 S. W. 444, 445, the plaintiff was engaged at work in the kiln room of a cement plant; this room was permeated with coal dust; an explosion occurred which resulted in injuries to plaintiff; there was evidence that coal dust when mixed with air is inflammable, but there was no evidence as to what agency caused the explosion or what touched it off. Under these circumstances the court said: ''While there was no direct testimony as to the cause of the explosion, we think the jury could legitimately conclude from the facts and circumstances in evidence that it was caused by the negligence of defendant in permitting the accumulation of the coal dust and other combustible substances in the room where plaintiff was at work. There was no testimony to account for the explosion in any other way. A cause being shown which was calculated to produce the explosion, it is a warrantable inference, in the absence of a showing of other causes, that the one shown was the operative agency in bringing about the result.''

And so, in the case at bar it was shown that the gasoline tank of the plane was full when Johnston

embarked on his fatal flight, that when it was full fumes and even pure gasoline emanated from the admittedly defective gauge to such extent as to permeate the cabin, that such a condition was dangerous and reasonable foreseeability indicated that injury might result therefrom, and that something did in fact ignite in the cabin with fatal results. Upon these facts the jury was warranted in believing that on this occasion the cabin was impregnated with gasoline vapor as a result of appellee's negligence, that this vapor ignited, and that deceased met his death as a proximate result thereof. It was not essential to recovery that there be positive evidence as to the source of the spark or that there be any showing that the spark itself was caused from appellee's negligence. In our opinion the case was clearly one for decision by a jury, and since the jury found in favor of the plaintiff the action of the trial court in setting aside the verdict and entering judgment for the defendant was clearly erroneous.

In this connection we repeat the language of this court in the case of Hercules Powder Co. v. Williamson, 145 Miss. 172, 110 So. 244, 246: ''Certain facts may be clearly established from which one sensible, impartial person would infer that proper care had not been used. Another person, equally sensible and equally impartial, would infer that proper care had been used, and, therefore, no negligence. In this class of cases the law commits the issue of fact to the jury. The ordinary jury is supposed to be, and is usually comprised of, men of education and men of little education, of men of learning in particular lines, and men whose learning consists of only what they have seen and heard, of merchants, mechanics, farmers, and laborers. Thus constituted, they sit together consulting and applying their separate experiences in the affairs of life and from the proven facts draw their conclusions. 'This average judgment thus given it is the great effort of the law to obtain. It is assumed that twelve men know more of the common

affairs of life than does one man; that they can draw wiser and safer conclusions from admitted facts thus occurring than can a single judge.' Sioux City & Pacific Railway Co. v. Stout, 17 Wall. 657, 21 L. Ed. page 745.''

The judgment of the lower court is accordingly reversed and judgment will be here entered in favor of appellant for the sum of $12,500 with interest at the legal rate of 6% per annum from January 19, 1949, the date of the judgment in the lower court.

Reversed and judgment here.