GRICE v. CENTRAL ELECTRIC POWER ASSN.

No. 40343 March 4, 1957 92 So. 2d 837

438

*Barnett, Jones & Montgomery,* Jackson; *Guy Idom* and *Roy Noble Lee,* Forest, for appellant.

*Watkins & Eager,* Jackson; *Huff & Huff, O. B. Trip-
lett,* Forest; *A. M. Warwick,* Carthage, for appellee.

*Barnett, Jones & Montgomery,* Jackson; *Guy Idom* and *Roy Noble Lee,* Forest, for appellant.

McGEHEE, C. J.

The plaintiffs, who are the appellant Mrs. Jereline Sullivan Grice and her four children, sue for the wrongful death of Leroy Grice, her husband and the father of the children, which occurred on November 22, 1954, when a thirty-foot boom operated in connection with a dragline on a piece of road construction machinery came in

contact with a high voltage electric light wire of the defendant, Central Electric Power Association. At the conclusion of all of the testimony as to how the death occurred and as to the alleged fault of the defendant Electric Power Company, the jury returned a verdict in favor of the plaintiffs for the sum of $60,000 as actual damages. The defendant Electric Power Company had requested a peremptory instruction in its favor but this instruction had been refused by the trial court. After the verdict was rendered, the defendant moved for a new trial on several grounds, among which were that the verdict was against the overwhelming weight of the evidence, and was so excessive as to evince passion and prejudice on the part of the jury. The eight grounds alleged as a basis for a new trial were rejected by the trial court, and the motion therefor was overruled.

Thereupon the defendant Electric Power Company filed a motion for judgment *non obstante veredicto*. This motion was taken under advisement for a decision in vacation and was by the trial court sustained about sixty days later.

From the order sustaining the motion for judgment notwithstanding the verdict, and setting aside the same, and in rendering judgment in favor of the defendant on the ground that it was entitled to a peremptory instruction in its favor at the conclusion of the evidence, the plaintiffs prosecute this appeal.

In May 1954, the Mississippi State Highway Commission had decided to construct or reconstruct on its right of way a length of paved road from the City of Forest to the Town of Sebastopol, that is to say for a distance of approximately ten miles in a northeasterly direction from Forest to Sebastopol. Thereupon the Highway Commission notified the defendant Electric Power Company of the necessity of removing its poles and electric lines, which were then located on the right of way, so that they would still be on the highway but out of the

course of the proposed new construction. The defendant Electric Power Company was submitted a plan showing the center line of the right of way and the limits of the boundaries thereof in order that the Electric Power Company might agree with the Highway Commission as to the relocation of the poles on which its electric lines were to be replaced, and an on-the-ground survey was made as to the relocation of the poles where stakes had been placed for that purpose. The proposed new construction of the highway started at Sebastopol and proceeded in a southwesterly direction toward the City of Forest.

At or near the place of the accident which resulted in the death of Leroy Grice, a dirt fill approximately eleven feet high had been constructed for some distance on the northernmost side of the line of poles and high voltage wires as relocated by the defendant Electric Power Company. In the construction of this fill, the road contractor, Southern Contraction Company of Taylorsville, Mississippi, was using a boom and dragline stationed on a construction truck. Robert McWilliams was operator of the boom and dragline. To the end of the boom there was attached a bucket weighing from 1,000 to 1,200 pounds, and which would scoop up from 2,700 to 3,000 pounds of dirt at a time and swing the same onto the fill. Leroy Grice was the driver of the truck on the occasion of the accident. When the operator of the boom and dragline undertook to swing this bucket of dirt from the right of way onto the fill, the proof discloses that Leroy Grice, knowing that this was the last bucket to be moved at that particular point, had lighted a cigarette and had stated to a person nearby that ''I have to move the truck up'', and when he began getting on the truck, with one foot on the ground, the boom came in contact with the high voltage electric wire, carrying at least 7,200 volts of electricity, and he was

killed. Robert McWilliams testified substantially to the same effect.

The proof on behalf of the plaintiffs was that Grice was killed at or near an electric light pole which was not entirely out of the line of construction, and which was too close to the place where the construction was being done, and that the pole was not high enough for a sufficient clearance of the boom underneath the wire. Robert McWilliams, the operator of the boom and dragline, testified that he left his machinery at the place where the accident occurred and that it remained there for at least a week before being moved. He was in a position to know where the pole was, at or near which the accident occurred. However, some of the witnesses for the defendent placed the scene of the accident at or near a different electric light pole. The location of the pole where the accident occurred, according to the testimony on behalf of the plaintiffs, was approximately fifteen feet from the southernmost boundary of the 100-foot road right of way; and the proof was ample to show that if this particular pole had been placed approximately fifteen feet nearer this southernmost boundary line of the road right of way, where it would still not have been on private property, there would have been more than ample clearance for the boom underneath the high voltage electric light wire, and that the pole pointed out to the witnesses as being where the accident occurred was too near the work, and that the electric light pole, which was six feet in the ground, was not high enough for the safe operation of the boom and dragline at the place of the accident; that this pole was nearer to the dirt fill than any of the other poles. Moreover, the photographs, drawings and other exhibits of this particular pole clearly show that it was up in the embankment of the fill and within the line of the construction of the road; and that the boom had sufficient clearance at and between the

other poles toward Sebastopol, as the work had progressed from that direction.

It is deemed unnecessary to cite and quote from the numerous decisions of this Court to the effect that those handling the dangerous agency of electricity are held to the highest degree of care for the safety of those who have a right to be near such high voltage lines.

It is also unnecessary to cite the decisions supporting the well-established rule that in determining whether the defendant is entitled to a directed verdict, the evidence must be treated as proving every fact favorable to the plaintiff's case which is established either directly or by reasonable inference, among which cases are, however, those of Dean v. Brannon, 139 Miss. 312, 104 So. 173; Bankston v. Dumont, 205 Miss. 272, 38 So. (2d) 721; Kurn v. Fondren, 189 Miss. 739, 198 So. 727; Stricklin v. Harvey, 181 Miss. 606, 179 So. 345; Johnston v. Canton Flying Service, 209 Miss. 226, 46 So. (2d) 533. The same rule applies to a motion for a judgment notwithstanding the verdict.

The trial judge, in his written opinion holding that the motion for the judgment notwithstanding the verdict should be sustained refers to the cases of Cumberland Telephone and Telegraph Company v. Woodham, 99 Miss. 318, 54 So. 890, and the Southern Pine Electric Power Association v. Denson, 214 Miss. 397, 57 So. 2d 859, and then concluded that he should have given a directed verdict in favor of the defendant at the close of the evidence at the trial on the ground that the act of the operator of the boom and dragline in swinging the boom against the high voltage wire, and the act of Leroy Grice in undertaking to get on the truck while the boom was on or among the high voltage wires, was an intervening and independent, proximate cause of the accident. But we are of the opinion that the two cases referred to do not support that conclusion so as to absolve the Electric Power Company of its negligence, at least as a con-

tributing, proximate cause of the accident, and for the following reasons:

(1) In the Woodham case, supra, a Mr. Burnham owned an electric light plant that supplied lights for the Town of Escatawpa, and his electric light lines were on the same side of Straight Street as was Mr. Woodham's residence, and the telephone line of the Cumberland Telephone and Telegraph Company extended along the street on the opposite side thereof, but from a pole of the telephone company across the street from the Woodham residence, a telephone line extended into the Woodham residence to the telephone therein. The telephone pole across the street from the residence had become badly decayed at or near the ground. During a rain and windstorm, this telephone pole, because of its defective condition, broke off near the ground causing the telephone wire which extended into the Woodham residence to fall across the electric light lines, causing a short circuit in the Woodham residence at the telephone. Mr. Woodham called the electric light plant and had the power cut off, and then while he was undertaking to remedy the situation, the wife of Mr. Burnham, in his absence, cut the power back on at the electric light plant, and this resulted in Woodham being electrocuted. Of course the telephone company had nothing to do with cutting the power back on at the electric light plant, but its negligence was held to be a proximate cause of the death of Mr. Woodham. In that case the Court said, among other things, in discussing proximate cause, that: " * * it will be sufficient to say that the negligent act of a person, resulting in injury, is the proximate cause thereof, and creates liability therefor, when the act is of such character that, by the usual course of events, some injury, not necessarily the particular injury, or injury received in the particular manner complained of, would result therefrom, provided the attendant circumstances are such that an ordinarily prudent man ought reason-

ably to have anticipated that some injury would probably result from the act done."

(2) In the case of Southern Pine Electric Power Association v. Denson, supra, it was shown that the power company placed its high voltage wires twenty-four feet from the ground across the backyard of Mr. and Mrs. Stringer. They had a water well directly underneath the wires. When Mr. Stringer undertook to remove a twenty-one-foot piece of pipe from his well, while standing on a platform around the well curb, he pulled the piece of pipe out of the well to clean out the strainer point thereof, and brought the pipe in contact with the electric light wire overhead, and he was instantly killed. Thereupon, Mrs. Stringer undertook to rescue him and was likewise killed. It would be just as reasonable to have said in that case that the act of Mr. Stringer in bringing the metal pipe into contact with the high voltage wire was the intervening and sole, proximate cause of his and Mrs. Stringer's deaths as it would be to say in the instant case that the act of Robert McWilliams in bringing the boom in contact with the wire and of Leroy Grice in stepping onto the truck on which the boom and dragline were stationed was the sole, proximate cause of the death of Mr. Grice. Liability was fixed against the defendants in both the Woodham and Denson cases on the ground that the defendants respectively should have reasonably foreseen that some accident could, and very probably would, result from the original negligent act of the defendants in those cases.

In the instant case the proof was ample to show that the representatives of the defendant Electric Power Company were frequently passing along this construction work and not only necessarily saw this machinery in operation in relation to the location of its electric light lines, but it is also shown that they had found it necessary on one or more occasions to go around this boom and dragline machinery while it was in operation.

It is true that this is the only accident of this particular character that had occurred in road construction work this close to the electric power lines, but it is likewise true that the accidents in the Woodham and Denson cases were also unusual.

■■■ We are of the opinion that the proof on behalf of the plaintiffs in the instant case discloses not only that the accident complained of here would possibly occur but that it would very likely and probably occur with this electric light pole in the edge of the dirt fill that was being constructed, and particularly as the highth of the fill was being raised to within eighteen feet of the electric light lines during the course of the construction up to the time of the accident, according to the plans and specifications for the work. We think that the question was clearly one to be submitted to the jury, and that it was error for the trial court to set aside the verdict of the jury and to render a judgment for the defendant Electric Power Company notwithstanding the verdict.

■■ ■ The Highway Commission had permitted the defendant Electric Power Company, under legislative authority and free of charge, to place its poles and electric power lines on the highway right of way, and in the instant case it had agreed to pay to the Electric Power Company the sum of $2,054.30, and actually paid the same, for the relocation of thirty-eight poles so that they would be out of the course of the construction of the new highway. There appears to be some conflict in the testimony as to whether the poles were placed at the points pointed out by the Highway Department to the representative of the Electric Power Company or whether the Electric Power Company determined the exact place where each pole was to be relocated, but in either event the Electric Power Company should not have, even with the consent or at the direction of the Highway Department, relocated any pole at a point where they could reasonably have foreseen that the road machinery would

probably come in contact with the high voltage wires. █ The decision of this Court in the Denson case, supra, should make it clear that those handling the dangerous agency of electricity should exercise the highest degree of care to keep their high voltage wires a sufficient distance from "men at work" that no contact therewith will probably be made in the usual course of events.

In the case of Johnston v. Canton Flying Services, supra, the jury returned a verdict for the plaintiff in the amount of $12,500, whereupon the defendant immediately made a motion for judgment in its favor *non obstante veredicto*. The trial court sustained this motion on the ground that defendant was entitled to a peremptory instruction and rendered judgment in favor of the defendant, from which plaintiff appealed and contended that the evidence was sufficient to make a case for decision by the jury and that the Supreme Court should reverse the judgment of the trial court and enter judgment here in her favor upon the jury's verdict. This Court, in agreeing with the contention of the plaintiff, said: "The judgment of the lower court is accordingly reversed and judgment will be here entered in favor of appellant for the sum of $12,500 with interest at the legal rate of 6% per annum from January 19, 1949, the date of the judgment in the lower court."

The judgment of the lower court is likewise reversed in the instant case, and a judgment will be here entered in favor of the plaintiffs for the sum of $60,000, with interest at the legal rate of six percent per annum from the 16th day of March 1956, the date of the judgment which was based upon the verdict of the jury in the lower court.

Reversed and judgment here for the appellants.

*Hall, Kyle, Holmes* and *Gillespie*, JJ., concur.

## ON SUGGESTION OF ERROR

September 23, 1957 96 So. 2d 909

HALL, J.

The suggestion of error filed herein by the appellee to the opinion heretofore rendered on March 4, 1957, as reported in 92 So. 2d 837, first challenges our action in holding that this case on the facts was one for decision by a jury and that consequently the trial court erred in sustaining a motion of the appellee, defendant in the lower court, for a judgment non obstante veredicto. We have carefully reconsidered that point and we are of the opinion that our decision with respect thereto is correct and that no reason has been shown why we should depart therefrom. As to this point the suggestion of error is accordingly overruled.

The appellee next contends that we erred in the former opinion herein by rendering a judgment in favor of the appellant, the argument being that there was pending before the trial court a motion for a new trial which has not yet been passed upon. In the original brief for the appellant, the motion for a new trial was discussed and the argument was made that there was no merit in the several points mentioned therein, and that therefore we should enter judgment here in favor of the appellant. In appellee's reply thereto, no mention whatever was made of the motion for a new trial. The appellee did not make any argument whatsoever as to the merits of the motion for a new trial. In the oral argument of the case the appellant contended that we should not only set aside the judgment of the lower court sustaining the motion for judgment non obstante veredicto but that we should enter judgment here in favor of the appellant. According to our recollection of the oral argument, no mention was made by either party of the pendency of a motion for a new trial, and it was for this reason that the writer of the original opinion herein made the statement that

the eight grounds alleged as a basis for a new trial were rejected by the trial court and that the motion therefor was overruled. That statement was not correct. In fact the record shows that on the day when the trial of this case was concluded and the jury had returned a verdict in favor of the original plaintiff, appellant here, the defendant, appellee here, filed not only a motion for a new trial but also a motion for a judgment notwithstanding the verdict. On the same day the court entered an order reciting that a motion for a judgment notwithstanding the verdict had been filed and that there had been filed a separate motion for a new trial in the event the first motion should be overruled, and the court took both motions under advisement for a decision thereon in vacation. There are numerous authorities which hold that the filing of two such motions at the same time constitutes a waiver of the motion for a new trial, but this rule is not universally accepted. We do not place the decision in this case upon that ground but merely mention it without following or rejecting the suggested rule. However we do feel that the appellee had ample opportunity to bring the Court's attention to the separate alternative motion for a new trial, but on the original presentation of the case nothing was said by appellee about it and it was not even raised until the appellee filed its suggestion of error, and we think that under all the circumstances the appellee waived its alternative motion for a new trial, and we are of the opinion that this point in the suggestion of error should be overruled.

The appellee contends finally that we erred in allowing interest to the appellant from the date of the original verdict and in this respect we think the appellee is correct. In the case of Johnston v. Canton Flying Services, 209 Miss. 226, 46 So. 2d 538, the jury had returned a verdict in favor of the plaintiff and the defendant made a motion for judgment notwithstanding the verdict and the lower court sustained this motion and the plaintiff

appealed. We reversed the action of the lower court and entered judgment here in favor of the original plaintiff for the amount of the verdict, with interest at the legal rate of six percent from the date of the verdict. No suggestion of error was filed in that case but the allowance of interest from the date of the verdict was erroneous. The Chief Justice, in writing the opinion in the case at bar, followed what was said in the Johnston case in allowing interest from the date of the verdict. Section 39 of the Code of 1942 provides: "All judgments and decrees founded on any contract, shall bear interest, after the rate of the debt on which the judgment or decree was rendered. All other judgments and decrees shall bear interest at the rate of six per centum per annum." The allowance of interest in tort cases is regulated by statute, and it will be noted from the statute which we have cited that interest shall be allowed, not on verdicts but on judgments, and there was no valid judgment at the time the verdict was rendered nor thereafter until the decision in this case on March 4, 1957. In the case of G. & S. I. R. R. Company v. Bond, 181 Miss. 254 (277), on the suggestion of error in 181 So. 741, where a remittitur had been ordered on the judgment of the trial court and interest had been allowed thereon from the date of the original verdict, this Court held that the judgment should bear interest from the date of its rendition in this Court. Therefore the judgment in the case at bar should bear interest only from March 4, 1957, which is the date of the judgment entered in this Court, and to that extent and in this respect the suggestion of error is sustained.

Suggestion of error overruled in part and sustained in part.

*McGehee, C. J.,* and *Kyle, Holmes* and *Gillespie, JJ.,* concur.