JONES, Justice:
This tragic case, involving the drowning of a six-year old child, comes from the Circuit Court of Jackson County where the jury returned a verdict for the defendant. We affirm.
The City of Pascagoula leased property from the American Legion and Jackson County on which is situated what is known as the Old Spanish Fort and lands adjacent thereto, including a part of Krebs Lake.
The city used this property as a recreation center for the public. The grounds were used as a playground and the lake for swimming and boating. There was a pier erected by the city extending from the shore into the lake for some distance. The water was shallow around the shore and at the deepest point near the end of the pier was five or six feet. On May 28, 1966, the said child, Kenneth Allen Carlson, without the knowledge of his mother, the plaintiff, accompanied his brother to the pier and swimming beach in front of the Old Spanish Fort.
The declaration alleged that the child fell off the end of the pier and drowned. It is charged that the death was proximately caused by the negligence of the appellee in that it negligently: (1) failed to erect railings or guardrails along the side of the pier, (2) failed to provide a restricted area for swimming for children, (3) failed to provide a lifeguard, and (4) failed to take reasonable precautions to prevent injury or death to children.
*280 After the evidence had been completed, the case was submitted to the jury solely on the issue of whether or not the City of Pascagoula was negligent in failing to have a lifeguard as had been done in previous years. The question was submitted by instructions to the jury, leaving to them the decision as to whether the city was negligent in failing to have a lifeguard on duty and whether the drowning of the child was proximately caused or contributed to by such failure. No other issue on negligence was submitted to the jury.
The jury was instructed for the defendant that even though they might believe that the swimming area was dangerous, particularly to those who were unable to swim, that danger itself does not constitute negligence and that the plaintiff must prove that the defendant negligently failed to perform some act required of it concerning the swimming area in question, or negligently performed an act, which directly and proximately contributed to the death of the decedent.
Under these instructions, the jury found for the defendant.
The plaintiff requested instructions that it was a duty of the city to furnish a lifeguard. These instructions were refused, and under the facts of this case, we think correctly.
The testimony did not show how or why the child drowned. His older brother had come with him, but when the case came to trial, the brother was in another state and did not testify. The only things shown by the evidence were that at one time the child was on the pier; at another time he was in the water near the Old Spanish Fort; and that the older child sped home about dinner time and told his mother that they thought the little fellow was drowned because they could not find him.
A search immediately was instituted by the mother and grandmother and others to locate him in the neighborhood, but, he could not be found. A rescue squad was called and after grappling for two or three hours, the body was found somewhere in the vicinity of the pier. How the body got there was not shown. It was shown that a wind came up shortly after noon, but it was not known whether the child got into the water at some other place and was carried to the vicinity of the pier by the effect of wind. He was some little distance from the pier, however, and not right beside it.
There is no evidence in the record at any place as to how he reached his death except by drowning. None that he fell from the pier, was pushed therefrom, or whether he entered the water from the shore, was hit by a boat or what happened. Could we say under these circumstances that the verdict was against the overwhelming weight of the evidence? We do not think so.
In City of Evansville v. Blue, 212 Ind. 130, 146, 8 N.E.2d 224, 231 (1937), it was said:
There is no evidence showing the proximate cause of the death of the boy, and therefore no evidence upon which it could have been determined that his death was ■ proximately caused by the negligence of the city or its servants, even though the city had a duty to use reasonable care to protect him from his own negligence. The motion for a new trial should have been sustained.
In that case, the Indiana Court quotes from Bertalot v. Kinnare, Adm’r, 72 Ill. App. 52, 53, 54 (1897) where a similar case was involved except that the swimming pool was privately owned and operated as a business. The decedent there, a boy fifteen years of age, visited the pool, paid his admission, was last seen alive in the shallow end of the tank, and, fifteen minutes later, was discovered unconscious at the bottom of the pool. After reciting that the action was for damages based on *281 negligence of the pool owner, the Court said:
“The several counts of the declaration allege as the negligence complained of, first, failure of attendants to watch intestate while bathing; second, lack of railing at the north end of tank; third, permitting the room in which the tank was located to become over-crowded; fourth, failure to provide instructors to watch intestate, whereby failure to rescue resulted.
“It is doubtless the law that the proprietor of such an institution would be liable for injury to a patron, if such injury resulted from lack of ordinary care in providing for his safety, and without fault of the patron; but it is as surely not the law that such proprietor is in any sense an insurer of the safety of his patrons, nor would the death of a patron within his premises cast upon the proprietor the burden of excusing himself from any presumption of negligence. Brotherton v. Manhattan B. Imp. Co., 48 Neb. [563] 567 [67 N.W. 479, 33 L.R.A. 598, 58 Am.St.Rep. 709].
“It was incumbent upon defendant in error, as plaintiff in the trial court, to sustain his declaration with evidence, and to establish the averments of some one of its counts. The question here presented is simply whether the record shows evidence which would warrant the jury in finding that there was such lack of ordinary care as is alleged, and that it was the proximate cause of the death of the intestate.
“Defendant in error presented no evidence to show just how the lad came to his death, except that some ten or fifteen minutes after he was seen alive and in a place of safety, he was found unconscious, and, it may be, already dead, at the bottom of the swimming tank. * *
“The verdict for defendant in error was bad because unsupported by any evidence whatever as to how the intestate
happened to meet the disaster which resulted in his death, and what negligence, if any there was, contributed thereto, or was the proximate cause thereof. The verdicts, general and special, could have been based upon nothing but guesswork.” 212 Ind. at 144-145, 8 N.E.2d at 230.
The Indiana Court also quoted from Crone v. City of El Cajon et al., 133 Cal. App. 624, 630, 24 P.2d 846, 848, 849 (1933), where that Court said:
“The evidence must show some casual connection between the death of Emmitt and the fact that but one lifeguard was stationed at the pool. In order to permit a recovery the failure to have more than one lifeguard must have been the proximate cause of the death. In this we disregard any question of contributory negligence.
“The lifeguard was probably around the pool at the time Emmitt disappeared beneath the water. Emmitt’s own brother was swimming there. A number of youths, all expert swimmers, were in the pool and over the spot where the body was found. None of them, nor any of the many bathers in the pool, saw Emmitt sink or had any idea he was missing until about the time his body was found. The city of El Cajon was not required to insure the safety of the bathers in its pool, nor can a lifeguard guarantee that no bather will drown in the water he is patrolling. The city was only required to furnish a pool that was not in a dangerous or defective condition. Would two lifeguards have prevented the tragedy? If ten lifeguards had been employed would any one of them have been more likely to have seen the boy sink into the water than the considerable number of bathers who were swimming and diving near the spot where he must have disappeared? Under the facts before us we cannot conclude that the failure to have more than one lifeguard was the proximate cause of Emmitt’s *282 drowning.” 212 Ind. at 145, 8 N.E.2d at 230-231.
In Tombigbee Electric Power Ass’n v. Gandy, 216 Miss. 444, 454-455, 62 So.2d 567, 570-571 (1953), our Court said:
We are fully mindful of the rule that negligence may be established by circumstantial evidence and that the causal connection between an agency and the injury need not be shown by direct evidence, but this rule is qualified to the extent that the circumstances shown must be such as to take the case out of the realm of conjecture and place it within the field of legitimate inference. 38 Am. Jur. p. 1032, Negligence, Section 333; Johnston v. Canton Flying Services, 209 Miss. 226, 46 So.2d 533. To sustain ap-pellee’s case here we have nothing but the wildest form of conjecture, and there is no legitimate inference under anything shown by the record that an explosion was caused by electricity from appellant’s service line which created the resulting fire. On the contrary, the record is clear that the explosion was caused by the fire. There is no more reason to support a finding that this fire was caused by a spark of electricity than there is to say that it was caused from the act of some vandal or by the act of some thief stealing gasoline who carelessly permitted it to be ignited by a match or a lighted cigarette.
The record here shows nothing more, at best, than a remote possibility as to the origin of the fire and that possibility is written out of the picture by the testimony of Park and his son. But even in the absence of that testimony we still have nothing left but a bare possibility and we are faced with the rule so often declared by this Court that verdicts must rest upon reasonable probabilities and not upon mere possibilities, and the probabilities must be such as to show not only negligence but that such negligence was a proximate contributing cause of the damage.
The cases from Indiana, Illinois, and California, above cited, are similar to the instant case in that it was not shown how, where, or when the child was drowned. We find no error in the court’s refusal of the plaintiff’s instruction stating it was the duty of the city to furnish a lifeguard and in leaving the question to the jury as to whether the city in the exercise of ordinary or reasonable care was required to furnish a lifeguard and whether the failure to furnish such lifeguard was a proximate or contributing cause to the death.
We further think the plaintiff failed to maintain her case because there was no evidence as to how the child met his death or where he met it and no evidence of any nature that a lifeguard could have prevented the occurrence or that any negligence of the city proximately caused or contributed to the death. For these reasons, the case must be affirmed.
Affirmed.
ETHRIDGE, C. J., and RODGERS, BRADY and SMITH, JJ., concur.