Gregory Marshall GORDY et al., etc.,
Plaintiffs-Appellees,

v.

CITY OF CANTON, MISSISSIPPI,
Defendant-Appellant.

No. 75–2088.

United States Court of Appeals,
Fifth Circuit.

Dec. 6, 1976.

Rehearing and Rehearing En Banc
Denied Jan. 4, 1977.

**560**

Cary E. Bufkin, Jackson, Miss., for defendant-appellant.

Roland C. Lewis, Jackson, Miss., for plaintiffs-appellees.

Before COLEMAN, GODBOLD and HILL, Circuit Judges.

COLEMAN, Circuit Judge.

It is undisputed that Marshall Gordy came to his death by accidental electrocution in Canton, Mississippi, on February 2, 1974. It is conceded that the fatality occurred while Mr. Gordy was unloading a dump truck on a construction site, the bed of the truck making contact with overhead electric lines owned and maintained by the City of Canton. The paramount issue, therefore, is whether the City was guilty of negligence amounting to a proximate cause of the electrocution.

Gordy's minor sons sued for his wrongful death, 3 Miss.Code Ann. § 11–7–13 (1972). The jury verdict was for the plaintiffs, with damages assessed at $150,000. Motions for a directed verdict, for judgment notwithstanding the verdict, and for remittitur were denied. Canton appeals. We heard oral argument at Jackson on October 4, 1976. We affirm.

### I. The Law

For a better application of the facts bearing on liability, we first consider the relevant duties imposed by Mississippi law [1] on companies engaged in the business of transmitting and distributing the dangerous agency of electricity. The field is well flagged, by a wealth of Mississippi appellate precedent.

In a recent case [2] the Mississippi Supreme Court acknowledged that an electric company is not an insurer and is not liable for injuries unless it is guilty of some wrongful act or omission constituting a proximate cause of injury.

It held further, however, that an electric company is under a duty to safeguard the public against injury arising from its operations and, to the extent of requiring reasonable care to correct or remove the cause of danger if reasonably foreseeable and known to the company, this is true whether the danger arises from company negligence, from the negligence of others, or from causes over which it has no control.

---

1. *Erie Railroad v. Tompkins,* 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

2. *Mississippi Power and Light Company v. Shepard,* 285 So.2d 725 (Miss.1973).

The company must anticipate and guard against events which may reasonably be expected to occur. A failure to do so is negligence, even though the power company may not anticipate the injury which actually occurs.

■ The degree of diligence which a distributor of electricity must observe is described as:

1. A very high degree of care;

2. Everything that gives reasonable promise of preserving life must be done, regardless of difficulty or expense; and

3. The degree of care increases as the danger increases.

■ The duty is active in nature, and a continuing one. The company may not wait passively until some third person has gone to the trouble to volunteer information of a particular danger at a particular place. The duty applies both to construction and to the subsequent maintenance of the lines.[3]

■ Indeed, the rule is so stringent that an electric power company does not relieve itself of liability unless and until it has shown that it has exercised the highest degree of care to prevent the danger.[4]

■ Of course, a power company has no duty to guard against occurrences that cannot reasonably be expected or contemplated.[5]

In cases of likelihood that moving machinery, such as cranes and dump trucks, may come into contact with electric wires, the Mississippi Supreme Court has held:

If a reasonably prudent person in the position of the defendant should have anticipated danger to others from its installations, the defendant may be held liable.

. . . This is so even though the exact situation that caused the injury may not have been reasonably foreseeable. . . Many courts have held that, where the circumstances are such that the probability of danger to persons having a right to be near an electric line is reasonably foreseeable, a power company may be held liable for injury or death resulting from contact between such a line and a crane or other movable machine.[6]

In *Grice v. Central Electric Power Association,* 230 Miss. 437, 92 So.2d 837, 841, 96 So.2d 909 (1957) the plaintiffs brought suit for the wrongful death of Grice which occurred when a 30-foot boom operated in connection with a dragline on a piece of road construction machinery came in contact with a high voltage electric wire belonging to the defendant power company. After setting forth the general rule that "those handling the dangerous agency of electricity are held to the highest degree of care for the safety of those who have a right to be near such high voltage lines", 92 So.2d at 839, the Court held:

We are of the opinion that the proof on behalf of the plaintiffs in the instant case discloses not only that the accident complained of here would possibly occur but that it would very likely and probably occur with this electric light pole in the edge of the dirt fill that was being constructed, and particularly as the height of the fill was being raised to within eighteen feet of the electric light lines during the course of the construction up to the time of the accident, according to the plans and specifications for the work. We think that the question was clearly one to be submitted to the jury. 92 So.2d at 841.

---

**3.** *Mississippi Power Company v. Luter,* 336 So.2d 753, 756 (Miss.1976); *Mississippi Power Company v. Harrison,* 247 Miss. 400, 152 So.2d 892, 897 (1963); *Delta Electric Power Association v. Burton,* 240 Miss. 209, 126 So.2d 258, 261 (1961); *Potera v. City of Brookhaven,* 95 Miss. 774, 49 So. 617 (1909).

**4.** *Mississippi Power Company v. Luter,* 336 So.2d at 756.

**5.** *Mississippi Power and Light Company v. Shepard,* 285 So.2d 725, 733.

**6.** `Mississippi Power and Light Company v. Walters,* 248 Miss. 206, 158 So.2d 2, 16; 160 So.2d 908 (1963).

Due to the foreseeability of death or injury under such circumstances, those handling electricity must

exercise the highest degree of care to keep their high voltage wires a sufficient distance from "men at work" that no contact therewith will probably be made in the usual course of events.

*Grice v. Central Electric Power Association,, supra,* 92 So.2d at 841.

When faced with such circumstances, a power company is not permitted to theorize as to the probable effects or to "speculate upon the chances of results affecting human life". *Mississippi Power & Light Company v. Shepard, supra,* 285 So.2d at 731.

■ It is obviously not enough that a power line was originally constructed in a safe manner. Nor is it sufficient that such a potentially dangerous instrumentality is safe to some people at some point in time. Courts in many jurisdictions have held a utility liable on the theory that its uninsulated high power wires were not maintained at a sufficient height under all the circumstances. *See Mississippi Power & Light Company v. Walters,* 158 So.2d at 19.

■ As the Supreme Court of Mississippi has observed, there is

no principle of law which entitles the owner and operator of dangerous electric wires, merely by virtue of prior occupation, to insist that it may continue to maintain its wires in the same condition as if remote from human activity and threatening harm to no one, regardless of changes in the premises made by subsequent rightful occupants.

*Mississippi Power & Light Company v. Walters, supra,* 158 So.2d at 15.

## II. *The Facts*

■ The facts of this case will be stated in the light most favorable to the verdict.

The defendant operates an electrical distribution system for the City of Canton under the name of Canton Municipal Utilities Commission. Certain of its high power lines traverse the premises of Madison Furniture Industries (M.F.I.), a manufacturing plant located near the City of Canton.

Deciding to expand its plant facilities, M.F.I. contracted with the decedent, Marshall Gordy (Gordy), to prepare the construction site for the proposed expansion. Gordy's bid on the job was accepted in a letter dated January 21, 1974, which stated in part:

You are hereby directed to commence work immediately, weather permitting, with completion as quickly as possible.

As you are aware, the high-voltage power lines have not yet been removed from the site, and are not likely to be removed before your work is to be done, thus you shall be responsible for any damage to the lines and/or poles in the area of construction. You are also aware of the Sprinkler lines in the area of construction, which you will also be responsible for.

The letter was signed by Alton Clingan, the architect for M.F.I., in charge of the project.

Notice was given two or three weeks prior to the beginning of work, received by the Superintendent of the Utilities Commission, directing his attention to the fact that "it would be necessary to move the electrical lines as area of fill work would cover the location of one of the poles". The President of M.F.I. testified that he told the Superintendent that the fill work was going to "center under the lines".

Before work began on the construction site, the power lines crossing the work area were 31.5 to 34.5 feet above the ground. The subsequent moving and filling of dirt reduced the distance between the ground and the lines to 20–25 feet.

The Utilities Superintendent stated that Canton took no precautions to protect workers from coming into contact with the line, "except a talk with Mr. Clingan (M.F. I.'s architect), that we did have the high-powered lines there." In essence, the Superintendent testified that nothing was done because, "We assumed the work could be carried on *under* them."

The Superintendent further testified that two days before Gordy's death he went to the fill site and saw "some dirt being moved around some. I saw where there was some dirt there that had been moved or placed there." He stated he had seen a bulldozer and that he "saw the spot where the dirt had been pushed around". On cross-examination, he testified further that he had been informed that dirt was going to be placed on the fill site, that the dirt would be hauled there in trucks, and that he knew that as each load of dirt was dumped, it would reduce the distance between the ground and the wires.

There was ample evidence from which the jury could find, as its verdict indicates, that Canton had knowledge that the work was in progress under its electric lines, the wires were not insulated, the lines were not raised, the distance between trucks and lines was not measured for clearance, there were no guards or warning signs posted, no representative of the power company was on the job site, and de-energization of the lines was not considered because they supplied most of the town power.

On February 2, 1974, the day of his death, Gordy and another man were working on the southern perimeter of the project. While attempting to discharge a load of dirt, the dump bed of Gordy's truck came into contact with one of the feeder lines. Gordy was electrocuted as he stepped from the truck and made contact with the ground while holding to the door handle.

Leaving to one side the testimony of two expert witnesses called for the plaintiff, and assuming jury acceptance of the plaintiffs' version of the facts, a verdict of no negligence-no liability would have to be looked upon as a great surprise.

Certainly, there was no room for a directed verdict or a judgment notwithstanding the verdict, *Boeing Co. v. Shipman,* 5 Cir., 1969, 411 F.2d 365 (en banc).

### III. *Other Aspects of the Case*

■ 1. Canton argues that Gordy's own negligence was the sole proximate cause of his death, leaving it free of liability. Judge Nixon instructed the jury that if Gordy's negligence was the sole proximate cause of his death then the verdict had to be for Canton. The jury found otherwise, and on ample evidence to support the finding.

■ 2. Canton complains of the refusal to charge the jury on assumption of risk. It argues that Canton fulfilled its duty by warning Gordy of the danger and that he disregarded the warning. The warning, however, was contained in the letter from Clingan, the architect, to Gordy. This warning was inadequate. It did not come from Canton and it pertained only to financial responsibility for possible damage to the lines. Clearly, this was not the kind of warning envisioned by Mississippi law for such life endangering situations as that revealed by the evidence in this case.

Canton's reliance on *Mississippi Power & Light Company v. Nail,* 211 So.2d 815 (Miss. 1968) is misplaced. *Nail* sets forth the rule that a "contractor . . . fulfills its duty by warning the independent contractor of any latent danger". 211 So.2d at 819–820. In *Nail,* however, there was a contractual relationship between the deceased's employer and the power company. No such relationship is present here. The contract in *Nail* specifically forbade the presence of Nail at the place where he was electrocuted. Gordy was not working in a forbidden area—to the contrary, he was rightfully working where he was supposed to be. Lastly, in *Nail,* there were direct warnings from the power company to the deceased, by signs and by personal communications.

■ The Supreme Court of Mississippi has held the duty of a power company to protect third persons from obvious danger is non-delegable. *Henry v. Mississippi Power & Light Co.,* 166 Miss. 827, 146 So. 857, 858 (1933). This being so, Canton could not, in any event, rely on M.F.I. to discharge the duty which Canton owed Gordy and all others similarly situated.

Moreover, the Mississippi Supreme Court has stated:

We think there is no merit in the appellant's contention that, since the plaintiff had been warned of the danger of coming in contact with the power lines, the plaintiff assumed the risk of being electrocuted by coming in contact with the wires and was therefore barred of his right to recover against the Power Company. *Mississippi Power & Light Company v. Walters,* 158 So.2d at 22.

The denial of the assumption of risk charge was correct.

3. Gordy was contributorily negligent, but that does not bar the action. Under Mississippi law, issues of comparative negligence and contributory negligence are for the determination of the jury, *Jackson Yellow Cab Company v. Alexander,* 246 Miss. 268, 148 So.2d 674 (1963); *Hogan v. Cunningham,* 252 Miss. 216, 172 So.2d 408 (1965).

4. Admitting the testimony, elicited from expert witnesses, relating to the National Electrical Safety Code was not improper, *Mississippi Power & Light Company v. Shepard,* 285 So.2d at 736–737; Federal Rules of Evidence, Rule 803(18). Allowing the jury to take portions of it to the jury room, though error, was harmless in view of the other evidence of Canton's negligence. 28 U.S.C. § 2111; Rule 61, Federal Rules of Civil Procedure; *see Catholic Diocese of Natchez-Jackson v. Jaquith,* 224 So.2d 216, 221 (Miss.1969).

5. Appellant's attack on testimony as to the present net value of Gordy's life expectancy (most of which goes to weight rather than admissibility) must be rejected. *Har-Pen Truck Lines, Inc. v. Mills,* 5 Cir., 1967, 378 F.2d 705.

6. Considering the applicable law, there was no error in the grant or denial of jury instructions.

7. We remain similarly unconvinced by appellant's argument, vigorously pressed, that the jury failed properly to evaluate Gordy's contributory negligence, *Smith v. Walton,* 271 So.2d 409 (Miss.1973).

8. The same must be said of the contention that there should have been a remittitur, or else a new trial on the issue of damages, *Pellegrin v. J. Ray McDermott & Company, Inc.,* 5 Cir., 1974, 504 F.2d 884.

The judgment of the District Court is AFFIRMED.