221 So.2d 706 (1969)
Frank L. DENNIS, d/b/a Dennis Brothers Contractors, and Jimmy Rhea
v.
Kay W. PRISOCK.
No. 45287.
Supreme Court of Mississippi.
March 24, 1969.
Rehearing Denied May 5, 1969.
Cary E. Bufkin, Satterfield, Shell, Williams & Buford, Jackson, for appellants.
James S. Gore, Armis E. Hawkins, Houston, Walter M. O'Barr, Okolona, for appellee.
*707 RODGERS, Justice:
This is an appeal from the judgment of the Circuit Court of the First Circuit Court District of Chickasaw County, Mississippi, in favor of appellee, Kay W. Prisock, for damages accruing to her as a result of an alleged personal injury in an automobile collision.
*708 Mrs. Kay W. Prisock filed suit against Frank L. Dennis, a road contractor, and Jimmy Rhea, the driver of a water truck belonging to Frank L. Dennis. The accident occurred on Highway 389 on July 6, 1959.
The facts shown on behalf of Kay W. Prisock, hereafter called the plaintiff, on which the judgment was based, may be summarized as follows.
The plaintiff was driving her automobile north on Highway 389 about 8:30 in the morning at about 20 miles per hour. Jimmy Rhea drove the water truck into the road in front of the plaintiff, and she followed him. The gravel road on which they were traveling was dusty. It was said that Rhea drove the truck over to the right side of the road and stopped. She then attempted to pass the truck, but just at that instant Rhea "shot back in reverse across the highway at a 45 degree angle, hitting my [her] car." The truck "knocked the car backwards" from a "hard lick." The truck bent the hood and bumper and fender of the automobile. The front seat was knocked loose in the plaintiff's car and she was thrown forward under the steering wheel. The plaintiff testified that "it was a terrific jolt." She said: "I felt shock and numb all over. When I had my feet braced on the clutch, I felt immediately this place in my spine." She said she became sick and got a cousin to drive the automobile to find Mr. Dennis. They found Mr. Dennis and he agreed to have her automobile repaired.
On the other hand, appellants contend that the appellee ran into the water truck at a time when it was stopped. It is said that Rhea went with Mrs. Prisock to find Harvey Dennis, and that although he did agree to fix the appellee's automobile, there was very little damage to the car Mrs. Prisock was driving, and at the time she told Mr. Dennis that no one was hurt. There were witnesses to corroborate the testimony of both sides.
The appellee testified that she was sore all over, and was hurting and crimping and "spotting," and her breast was hurt. The appellee went to see Dr. Dyer the next day and he treated her for back strain to the lumbar region of her back. When she returned to her home in Jackson, Mississippi, she was treated by Dr. William Davis, who also treated her back trouble. Dr. Davis called Dr. Charles Neill, a neuro-surgeon, into the case in August 1959. Dr. Charles Neill noted appellee's lower back problem at L-5, S-1, but up to that time neither Dr. Dyer nor Dr. Neill had diagnosed appellee's problem as a ruptured disc.
The testimony shows that Mrs. Prisock suffered injuries from an earlier accident when on March 19, 1959, she fell down a flight of stairs and injured her kidneys. The appellants claim that she injured her back at this time and received treatment for the accident until August 10, 1959. On August 20, her back hurt her while she was working in her yard. On September 1, 1959, she had an automobile accident in which her ear was practically torn from her heard. Thereafter, she was in another automobile accident on January 31, 1962, and was hospitalized on February 2, 1962; and while she was in the hospital on that occasion it was discovered that she had a ruptured disc. She underwent surgery for this back condition in 1962. She testified that after the surgery her back did not pain her any more.
The appellants have assigned nine alleged reversible errors in the trial of the case in the Circuit Court, some of which have been argued fully, while others have not been pursued in depth. We will discuss those that we find determinative of the issues here involved.
The appellants assert that the trial court did not follow the law of the case established in the prior appeal to this Court.
The case came to this Court on appeal heretofore and we decided the issues before the Court at that time in Dennis v. Prisock, 254 Miss. 574, 181 So.2d 125 (1965). In that case we pointed out that the plaintiff's evidence was sufficient to *709 withstand a peremptory instruction and said:
"However, her evidence failed to connect or trace her back injuries with requisite certainty to an efficient cause for which the defendants are responsible. In fact, the great weight of the evidence indicates that there were at least five other accidents in which Mrs. Prisock was involved which were of a considerably more serious nature; and that at the most she received in this particular accident of July 6, 1959 only nominal damages." 254 Miss. at 582, 181 So.2d at 127-128.
Appellants cite the following cases: Poole v. McCarty, 233 Miss. 724, 103 So.2d 922 (1958); Holcomb v. McClure, 217 Miss. 617, 64 So.2d 689 (1953); and Cochran v. Latimer, 111 Miss. 192, 71 So. 316 (1916); and they contend that these cases are authority for their contention that the trial court should not have permitted a judgment for substantial damages, inasmuch as the Court originally held that the evidence in the former case showed that Mrs. Prisock had only nominal damages in the accident of July 6, 1959.
These cases cited by the appellants are not applicable here, because the evidence shown in the record now before the Court is different from the evidence shown in the original trial. The evidence now before the Court explains the difference between the injuries shown to have occurred in other accidents suffered by the plaintiff and the injury of July 6, 1959, at the time when she contends that her back was injured. For example, it is shown that she did not hurt her back when she hurt her elbow or when she severely cut her ear. There was corroborated evidence in the form of hospital charts written by the doctor who attended the plaintiff after the automobile accident on September 12, 1960. These records show that the plaintiff suffered from "chronic lumbar sacral sprain," which she related to the accident of July 6, 1959, and not the accident for which she was then hospitalized. The record now also shows on the second trial that Dr. Charles Neill was called into consultation on August 25, 1959, and at that time he found she had pain in L-5, S-1 which radiated down the left hip and leg. His opinion was that she had "a back pain problem," although he did not feel that she had a "neurosurgical condition at that time." He also testified that plaintiff developed her back problem from July 6, 1959. The cases cited by the appellants as authority on the question of "law of the case" on this point are not applicable; for example, in the Cochran v. Latimer case, supra, this Court held that there was no mental incapacity, undue influence, corruption or fraud shown in the original case, and the Court held that, on retrial the chancellor could not retry this issue. Moreover, the opinion in that case shows: "The competent evidence in this case overwhelmingly refutes this idea * * *."
We had an opportunity to examine the authorities on "law of the case" issue in Continental Turpentine and Rosin Company v. Gulf Naval Stores Company, 244 Miss. 465, 142 So.2d 200 (1962). We quoted from 3 Am.Jur. Appeal and Error § 985 (1936), and then we had this to say:
"The opinion of this Court in the first case was correct under facts shown and by the evidence introduced in that trial. Moreover, it was a separate and distinct action from the present case. If, however, the first case were a branch of the present action, as is contended by the appellants, the Supreme Court would not be bound by the opinion rendered on the first appeal, because, where the evidence on the second trial is materially different on essential elements, the decision on the first appeal will not be taken as the `law of the case.' [citing many cases]" 244 Miss. at 481, 142 So.2d at 207.
We do not agree with the contention of the appellants that the opinion in the first appeal restricted the trial court to nominal damages mentioned in our opinion in that case under the facts related by the evidence in the second case. We pointed out in the original opinion that the evidence *710 did not show with reasonable probability the connection between the accident in question and her back injury; however, we also pointed out that "plaintiff's evidence was sufficient to withstand a peremptory instruction." 254 Miss. at 582, 181 So.2d at 127.
The appellee, Mrs. Prisock, testified that she felt the injury to her spine when the accident occurred on July 6, 1959; that her back was stiff and hurt, and her legs hurt; she also testified that her back was not hurt at any time in any of her other accidents. The defendant argues that she should not have been permitted to tell that her back was not injured in the other accidents suffered by her. This contention is based upon the theory that the evidence was opinion evidence and was admissible only by a medical doctor, and not a layman.
We do not agree with this thesis. Any witness is competent to testify who has evidentiary facts within his personal knowledge, gained through any of his senses. A nonprofessional witness may describe personal injuries. Physical pain, weakness, exhaustion and the like are matters one may testify about. Whiddon v. Malone, 220 Ala. 220, 124 So. 516 (1929); Whistle Bottling Co. v. Searson, 207 Ala. 387, 92 So. 657 (1922); Vincent-Wilday, Inc. v. Strait, 273 App. Div. 1054, 79 N.Y.S.2d 811 (1948).
The textwriter in 32 C.J.S. Evidence § 546(22) (1964) has this to say on this subject:
"While a nonexpert or lay witness may not testify as an expert and give expert testimony as to the character or extent of a personal injury which he has sustained, a witness has been permitted to testify as to his own health or physical condition, his statements being regarded in some cases as a collective statement of fact. He may state simple inferences drawn by him from his own conscious subjective sensations as to his physical condition, and may testify as to the condition of his health and freedom from sickness at a particular time; and, according to some cases, may state his notion or feeling as to the character or extent of an injury and the personal results he has experienced therefrom.
"So it has been held or recognized that it is permissible for a witness to state his injury and prior condition; that an infection developed in his body and that it was uncontrolled; to state his physical symptoms or sympathetic symptoms; and to state his suffering or the pain which he suffered after an injury, and how he suffered, and the extent of his suffering, by reason of a personal injury. He may state his nervous condition or that he was troubled with nervousness; whether at a particular time he was under the influence of drugs; and that he had a bad cold."
The following cases cited by the appellants are not adverse to the foregoing holding. In F.W. Woolworth Co. v. Haynie, 176 Miss. 703, 170 So. 150 (1936), this Court held that the plaintiff could not testify that the substance in the water used by her caused the diseased condition of her hands. There was nothing to prevent her testifying that her hands were diseased. The Court drew the line of inadmissability at the point where she testified to facts requiring chemical analysis to show the effect of Pur-a-fac on the skin. This sort of proof required the testimony of knowledgeable witnesses.
In F.W. Woolworth Company v. Volking, 135 Miss. 410, 100 So. 3 (1924), this Court held that a plaintiff could not testify that the cold she contracted caused her nose and eyes to become sore so that she had to have her nose "burned out." The Court held that she could not testify alone that the injury to her nose necessitated its being burned out. On the other hand, we said: "* * * we think the testimony is competent and sufficient to show that she contracted a bad cold on account *711 of having to remain in the cold building during the day in question * * *." 135 Miss. at 419, 100 So. at 4.
In Yazoo & M.V.R.R. v. Boone, 111 Miss. 881, 72 So. 777 (1916), we held that testimony of plaintiff that she got wet and this caused a "polypus" to grow in her nose was unsubstantiated by the evidence. There was nothing in that case to prevent her from testifying that she had an obstruction in her nose. Her unsupported testimony that this growth was caused by the fact that she got wet was the objectionable part of her testimony.
We are of the opinion that Mrs. Prisock could testify that she had pain in her back as a result of the collision, that this back condition prevented her from performing her normal activities, and that the pain lasted until she was relieved by an operation. She could testify that her back hurt after an accident, and that there was no additional hurt as a result of a later accident. See Marley Construction Co. v. Westbrook, 234 Miss. 710, 107 So.2d 104 (1958).
The appellants next contend that Dr. John D. Dyer's testimony should have been stricken from the record because it is said there was no predicate for this evidence and that his opinion was based upon hearsay given him by the "doctors in Jackson." It is argued that there were "too many accidents with which he had no personal or otherwise acceptable access."
We agree with the argument that an expert witness cannot ground his expert opinion upon the expert opinion of others not in evidence. He may answer hypothetical questions based upon proper evidentiary assumptions, but an expert must base his opinion upon his own experience and examination. This does not mean that a doctor cannot ask a patient whether or not he hurts at the point of pressure. It does mean, however, that he cannot tell the jury that some other doctor told him the patient hurt when he was examined by the other doctor. See Wild v. Bass, 252 Miss. 615, 173 So.2d 647 (1965); City of Laurel v. Upton, 253 Miss. 380, 175 So.2d 621 (1965).
We do not agree, however, that the mere fact that Dr. Dyer stated that "she was being treated by doctors in Jackson and I had correspondence with doctors in Jackson" means that he based his opinion as to the plaintiff's injury on this correspondence. This is not the case. The testimony of Dr. Dyer is clearly based upon his own examination. This doctor was very familiar with the back injury of the plaintiff. In the former trial he was asked about the accidents which happened to the plaintiff, and since he did not know about them, he was naturally interested in finding out if the testimony of the doctors in Jackson with reference to these other accidents affected the previous injury to plaintiff's back. After hearing their testimony he simply said their testimony did not change his original opinion.
We think this testimony was admissible in evidence.
The mere fact that the appellee, Mrs. Prisock, had other accidents which other doctors might have believed caused the injury to her back did not result in making the testimony of Dr. Dyer inadmissible in the trial. It was said in Culver v. Union P.R.R., 112 Neb. 441, 446, 199 N.W. 794, 796 (1924):
"The saying is: `Who shall decide when doctors disagree?' Under our system of jurisprudence, the jury, and not the court, is the body which is authorized by law to decide such a question, and there is sufficient evidence to support the finding that the accident caused the injury."
In Culver the issue was whether or not the degeneration of the spinal cord caused paralysis from a dislocated vertebrae occurring while loading a hand car, or from a "complete transverse myelitis of the cord * * * as a result of syphilis."
*712 After the plaintiff concluded her testimony, the appellants made a motion to exclude the evidence, and when the Court overruled this motion the appellants proceeded to introduce evidence; consequently they thereby waived the objection to the action of the Court in refusing to exclude the plaintiff's evidence. Hattiesburg Butane Gas Co. v. Griffin, 206 So.2d 845 (Miss. 1968); Broadhead v. Gatlin, 243 Miss. 386, 137 So.2d 909 (1962); Kurn v. Fondren, 189 Miss. 739, 198 So. 727 (1940); Hauer v. Davidson, 113 Miss. 696, 74 So. 621 (1917); Hairston v. Montgomery, 102 Miss. 364, 59 So. 793 (1912).
The argument that the hospital bills were inadmissible in evidence is not well taken, since Dr. Dyer relates these bills to the injury alleged to have been caused by the automobile collision on which the suit is based. The argument as to the weight of the evidence is not persuasive on the issue of the competency of the medical expenses shown in the evidence. Ford & Houston Contracting Co. v. Moore, 253 Miss. 314, 174 So.2d 716 (1965).
It is next argued by appellants that the trial court erred in failing to grant a directed verdict, a peremptory instruction, and a motion for a judgment notwithstanding the verdict of the jury. This argument is directed toward the weight of the evidence. It is said that it is impossible for the accident to have occurred as the plaintiff contends. Primarily, however, it is argued that the plaintiff did not trace her back injury to the accident of July 6, 1959; that the plaintiff had undergone other accidents more severe than the accident of July 6, 1959 from which her back injury was more likely to have occurred. The thrust of appellants' defense is that the accident of July 6, 1959 and the contention that Mrs. Prisock was injured at that time was a fake because she had other accidents for which she had received compensation. It is said, "Mrs. Prisock had no injury." The record shows, however, that the plaintiff really had a ruptured disc for which she underwent an operation. She really had blood in her kidneys at another time, and she had to have her ear sutured to her head. It is contended, however, that "her injury came from the January 31, 1962 accident."
The jury had all of this information before it, and the jury was the judge of the weight and worth of the evidence. The jury decided that Mrs. Prisock's back injury was the result of the accident of July 6, 1959, for which the appellants were responsible.
The appellants next contend that the verdict of the jury was so excessive as to evince passion, bias and prejudice on the part of the jury. It is argued that this Court has already adjudicated in our former opinion that the accident was slight and that appellee's injury was minimal or nominal. We have pointed out above that the testimony in the second trial is different from that shown in the first trial. In the first trial we could not consider the medical expenses, nor the injury for which she was hospitalized, because the evidence left uncertain the cause of this injury. In the present case, however, the cause for the medical and hospital bills and the injury are traced with reasonable certainty to the accident of July 6, 1959 for which the jury has determined that the appellants are liable.
The appellee had $2500 medical expenses and she was in the hospital thirtynine days. It is shown by medical testimony that the appellee suffered a great deal and underwent a serious operation as a result of her injury. The jury returned a verdict of $20,000 in favor of Mrs. Kay W. Prisock, and from the record now before us, we are unable to say that this verdict is unreasonable or excessive, particularly since the second jury reduced the award. See Walters v. McLaurin, 204 So.2d 866 (Miss. 1967); Pellerin Laundry Machine Sales v. Jeffcoats, 248 Miss. 781, 161 So.2d 190 (1964).
*713 We do not find any merit in the other assignments of error set out in the appellants' brief. The judgment of the trial court is, therefore, affirmed.
Affirmed.
ETHRIDGE, C.J., and JONES, BRADY and SMITH, JJ., concur.