## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 91-KA-01276-SCT

*FRAZIER LEE JONES*

*v.*

*STATE OF MISSISSIPPI*

## CONSOLIDATED WITH

## NO. 92-KA-00190-SCT

*SUE ANN JONES*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/1/91 |
| TRIAL JUDGE: | HON. LARRY EUGENE ROBERTS |
| COURT FROM WHICH APPEALED: | CLARKE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DAVID A. STEPHENSON |
| | ANTHONY H. OGLESBY |
| | GEORGE S. SHADDOCK |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEAN SMITH VAUGHAN |
| DISTRICT ATTORNEY: | NA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 7/25/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 8/15/96 |

**EN BANC.**

**PITTMAN, JUSTICE, FOR THE COURT:**

¶1. Appellants, Sue Ann Jones, and her husband, Frazier Lee Jones, were found guilty of the crime of manslaughter, while engaged in the crime of child abuse/neglect. Miss. Code Ann. §§ 97-3-29 and 97-5-39 (1972). Sue Ann and Frazier Lee appealed this decision based on several assignments of error. Finding that the testimony of a public welfare worker was improperly admitted and exceeded the witness' knowledge, thereby creating undue prejudice, we reverse and remand.

## I.

¶2. On August 30, 1989, Shanquie Monae Jones [hereinafter "Monae"] was brought into the emergency room at Watkins Hospital in Quitman County. Monae was the daughter of Frazier Lee and Sue Ann Jones. After an examination, the doctor on duty determined Monae was suffering from a ruptured colon. Monae was transferred to Anderson Memorial Hospital for examination and treatment by a pediatrician. While at Anderson, Monae went into cardiovascular arrest and died at the age of eleven months.

¶3. Sue Ann and Frazier Lee Jones, were indicted for manslaughter committed while engaged in the crime of child abuse/neglect. The trial proceeded on two theories; the State attempted to show that the child died either as a result of medical neglect and/or malnourishment or from cocaine in her system resulting from culpable negligence on the part of defendants.

¶4. At trial, the physician/pathologist who performed the autopsy determined there were two causes of death: 1) a perforation in the colon causing infection of the abdominal cavity; and 2) elevated levels of cocaine in the infant's bloodstream. The doctor stated that Monae's abdomen could have been in this condition anywhere from 24 to 72 hours before her death. Furthermore, he testified that this condition would have been noticeable or visible due to the swelling and rigidity.

¶5. The State presented several witnesses who described Monae's malnourished and swollen condition. They also produced a toxicologist who testified to the means and methods by which cocaine could have entered the blood stream, including, oral ingestion, intravenous injection and passive ingestion, which is similar to passive smoke inhalation. There was also inference made to a small child finding a rock of crack cocaine and swallowing it, which would create a high level of the drug within the blood stream.

¶6. The defense countered with testimony by Sue Ann that she did not use drugs and had never seen her husband use them. A neighbor and Sue Ann's sister also testified that they did not know of Sue Ann or Frazier ever using drugs and that they were good parents.

¶7. The defense assigns several errors. Upon consideration of these issues, we find only one issue, the testimony of Carolyn Smith, merits reversal of the trial court's decision.

¶8. We would at the outset note the difficulty in trying these two cases together and recommend on remand that the trial court again consider severance. Failure to sever is raised as error only by Frazier Lee and he does not sufficiently show prejudice in this record to cause reversal on that issue. We do not direct severance.

## II.

¶9. Frazier Lee and Sue Ann argue that the testimony of Carolyn Smith, the welfare worker, created undue prejudice and constitutes reversible error. Specifically, they argue that Smith's testimony was beyond her knowledge or expertise.

¶10. During the course of her investigation, Smith viewed the child's records and medical reports. She testified that Sue Ann was not reliable about taking her children to the Health Department when

she was supposed to. In addition, she stated that she was certain the cocaine found in Monae's blood stream resulted from vaporization. Smith testified that she learned this information from the chemist involved in the case after the trial began. However, neither that chemist nor any other expert testified as to the vaporization process. The only reference made to that was by Sam Howell, the toxicologist, who discussed it as one of several ways in which the cocaine could have entered the infant's blood stream. The defense objected at trial to Smith's testimony concerning how the cocaine got in Monae's blood on the grounds that she had no knowledge on which to base such an opinion. The trial court allowed the testimony, and Sue Ann maintains this is reversible error. The State argues only that Smith's testimony was cumulative and previously admitted via the other witnesses' testimony, therefore its admission was harmless.

¶11. Smith testified as follows:

Q: In other words, you saw, in your opinion, that the mother loved the child and that she would not have done anything to harm it. . . . That if it was, in fact neglect, **it was through ignorance rather than intentionally.**

A: **That's what I thought until yesterday** when I found out a little bit more about cocaine. . . . I would say that I did not feel that Sue Ann Jones was responsible for the child's death until yesterday. This was a big mystery to me. Nobody knows how this child got cocaine, and yet she died of an overdose.

BY MR. STEPHENSON:

Your Honor, I'm going to object to her saying whether or not she felt somebody was responsible or not responsible. That's what the Jury is here for. She is obviously not qualified about that. . . .

BY THE COURT:

I think the question was asked generally about what she is responding to. Overruled.

* * *

Q: You did understand prior to yesterday that a child could ingest cocaine through food or from milk or something like that?

A: I didn't know how the child got it. I was of the opinion that it was through being mixed in the formula . . . **I had no idea it was vaporized**.

Q: Why does that change your opinion of whether Sue Ann would have - even though I know your opinion is not a medical opinion - about how the cocaine got in there . . . .

A: **Because I feel certain that that's how the child got an overdose of cocaine through vaporization.**

BY MR. STEPHENSON:

Your Honor, I object. Her opinion is based on absolutely nothing. She can't just give that to the

Jury just because she believes something unless she's going to base an opinion on something. That's totally improper.

BY THE COURT: Objection overruled.

Q: Ms. Smith, it escapes me how you can be certain that the child got cocaine through a vaporizer.

A: Well, the child couldn't reach out, she couldn't crawl and pick it up off the floor, . . . she couldn't feed it to herself. Somebody--she had to get it from some adult. I don't think Sue Ann would give this child poison.

BY MR. STEPHENSON:

Your Honor, I object. She can go so far, but, I mean, she can't sit here and reenact -- I mean to say it had to get it from an adult? That's not true. She can get it from the floor, can get it from a child --

BY THE COURT: Objection is overruled.

¶12. Mrs. Smith testified to something of which she had no personal knowledge. No expert at trial testified to these conclusions nor was Smith proffered as an expert concerning the methods of cocaine ingestion. Her testimony is in the form of a lay opinion, and thus subject to Mississippi Rule of Evidence 701. M.R.E. 701 states:

> If the witness is not testifying as an expert, [her] testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to the clear understanding of his testimony or the determination of a fact in issue.

¶13. Moreover, the comment to Rule 701 explains the two-part test for the admissibility of lay witness opinion testimony. First, the testimony must assist the trier of fact. Second, the opinion must be based on the witness' firsthand knowledge or observation. Miss. R. Evid. 701. cmt.; *see also Wells v. State*, 604 So. 2d 271, 278-9 (Miss. 1992) (applying this same two-part test). The second prong of the test is in accordance with M.R.E. 602 requiring that a witness who testifies about a certain matter have personal knowledge of that matter.

¶14. Smith's testimony is clearly not admissible pursuant to Mississippi's evidentiary Rules 602 and 701. A layperson, such as Smith, is qualified to give an opinion because she has firsthand knowledge which other laypeople, i.e., the jury, do not have. *Wells*, 604 So. 2d at 279. Here, Smith was not present at the home the day Monae died or any day remotely prior to that day. Accordingly, Smith is not a witness with firsthand knowledge of how Monae ingested the cocaine. Her testimony regarding the cocaine in Monae's body is merely speculative and apparently based on what she heard others say. Nor was her testimony cumulative as suggested by the State. This testimony was not admissible because it is speculative and Mrs. Smith had no personal knowledge of the facts to which she testified.

¶15. One additional note is in order. The record supports the finding of culpable negligence via the

neglect of Frazier and Sue Ann Jones. The jury could have reasonably found that they were culpably negligent by failing to obtain prompt medical attention and by not properly supervising their child which resulted in cocaine ingestion. It is the presence of cocaine in an eleven-month-old child and not necessarily the way in which it got there that evidences culpable negligence. In *Smith v. State*, 197 Miss. 802, 818, 20 So. 2d 701, 706 (1945), this Court defined culpable negligence as "negligence of a degree so gross as to be tantamount to a wanton disregard of, or utter indifference to, the safety of human life, and this shall be so clearly evidenced as to place it beyond every reasonable doubt." In *Campbell v. State*, 285 So. 2d 891, 893 (Miss. 1973), we further noted, "culpable negligence . . . may be defined as the conscious and wanton or reckless disregard of the probabilities of fatal consequences to others as the result of the willful creation of an unreasonable risk."

¶16. Therefore, that portion of Smith's testimony pertaining to the vaporization of cocaine was not necessary to establish guilt based on culpable negligence. However, because of the certainty of Smith's testimony and her official capacity, her testimony likely was instrumental in the jury's decision. We find the admissibility of her testimony to be prejudicial and harmful, thus requiring a new trial for Frazier Lee and Sue Ann.

III.

¶17. Sue Ann also assigns as error the testimony of Deputy Sheriff Falconer. The State presented testimony by Falconer, who interviewed the Joneses after the hospital reported neglect, as well as Smith, who investigated the Joneses on behalf of the Clarke County Public Welfare Department. In response to a question from Frazier's attorney, Falconer stated:

> I believe I asked Mr. Jones if cocaine was used as some type of tool to quiet the child down. If I remember correctly, at that time I told him that a doctor had mentioned that was a widespread use of cocaine as a pain killer or quietener, and he told me at that time that they never used anything like that and that he didn't use drugs.

Sue Ann contends this created undue prejudice and merits reversal.

¶18. This issue is procedurally barred, as no objection was raised at trial preserving it for appeal. Failure to raise a specific objection to testimony at trial will result in a waiver of this point on appeal. *Wilks v. State*, 408 So. 2d 68, 69 (Miss. 1981). Furthermore, Falconer qualified the statement by also testifying that Frazier denied using cocaine in that way or any other way. This qualification had a tendency to lessen the effect of the testimony, and again there was no timely objection made to the testimony. The testimony presented is harmless, despite the fact that this assignment of error is procedurally barred.

**¶19. REVERSED AND REMANDED FOR NEW TRIAL.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., AND McRAE, J., CONCUR. BANKS, J., CONCURS IN RESULT ONLY. MILLS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY ROBERTS AND SMITH, JJ.**

**MILLS, JUSTICE, DISSENTING:**

¶20. I write separately to suggest that the majority errs on the issue of Carolyn Smith's opinion testimony. I agree with the majority that the evidence offered was not in the form of expert opinion and was improper lay opinion. However, whether these statements were the product of an expert or not is irrelevant. The statements were improperly admitted because there was no factual basis for the opinion. The real issue is whether the improper admission requires reversal.

¶21. The main issue for the jury to determine is whether Jones was culpably negligent in caring for his child by failing to seek treatment for a perforated colon or by improper supervision. Carolyn Smith's paltry contribution to this inquiry was that she thought (1) the child died of cocaine overdose, and (2) the parents were responsible for the presence of cocaine in her system. As stated above, Smith, a social worker, had no factual basis for either conclusion. This made her testimony objectionable. The self-evident fact of her speculation is what makes this testimony harmless. Smith completely impeached her own testimony stating, "**That was a big mystery to me. Nobody knows how this child got cocaine**, and yet she dies of an overdose." Moments later she stated, "**I didn't know how she got it**." When the defense attorney called Smith's attention to the fact that she had no basis for her opinion, Smith stripped away the remaining vestiges of her own credibility by departing on a fantastic dervish of conjecture. It is a misnomer to even suggest that Smith's testimony was lay opinion. Her testimony could more properly be classified as an experiment in clairvoyance. To assume that the jury was improperly swayed by this highly speculative, unfounded and substantially impeached testimony is to fail to give sufficient credit to the average juror of our State. The majority concludes that "because of the certainty of Smith's testimony and her official capacity, her testimony likely was instrumental in the jury's decision." If the majority is concerned about any perceived "cloak of authority" surrounding Smith due to her title, I again suggest that she stripped herself of any such articles.

¶22. The majority concedes that "Smith's testimony pertaining to the vaporization of cocaine was not necessary to establish guilt based on culpable negligence." Despite this concession, the majority reverses for a new trial. In *Wells v. State*, we concluded that the error resulting from improperly admitted lay opinion was, at best, harmless. *Wells v. State*, 604 So. 2d 271, 280 (Miss. 1992). In doing so we looked at the totality of the circumstances. *Id.* In that case, physical documentation independently supported the jury's finding of guilt. *Id.* at 280 n.5. In the present case, the record is surfeit with corroboration of culpable negligence. Properly admitted expert testimony showed that the infant's infected abdominal cavity was easily detectable anywhere from one to three days in advance of the infant's admission to the hospital. I would use the *Wells* "independent support" test to determine whether the error was harmless instead of adopting the majority's "likely instrumental" test.

¶23. Smith's testimony was without any value whatsoever. Thus, the admission of her testimony was error. Simultaneously, the lack of value being self-apparent, the admission of this testimony was harmless. I would affirm.

**ROBERTS AND SMITH, JJ., JOIN THIS OPINION.**