# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-00202-SCT

*MISSISSIPPI DEPARTMENT OF TRANSPORTATION*

*v.*

*KENNETH MICHAEL CARGILE*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/26/2001 |
| TRIAL JUDGE: | HON. ROBERT G. EVANS |
| COURT FROM WHICH APPEALED: | JASPER COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES N. BULLOCK |
| ATTORNEY FOR APPELLEE: | BOBBY L. SHOEMAKER |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 05/29/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     In this Tort Claims Act case arising from a one-car accident on a wet state-maintained highway, the Mississippi Department of Transportation appeals to this Court from a judgment of $38,151 in favor of Kenneth Michael Cargile awarded by the Circuit Court of the Second Judicial District of Jasper County. Finding no reversible error, we affirm.

## FACTS

¶2.     On the night of February 10, 1998, Kenneth Cargile was traveling on Mississippi Highway 528 in a storm when his truck left the road and crashed. He claims that he lost control of his truck when it hydroplaned after running through a large pool of water which had collected on the road.

¶3.     Cargile sued the State of Mississippi and the Mississippi Department of Transportation ("MDOT") under the Mississippi Tort Claims Act.  He asserts that the State of Mississippi and MDOT negligently failed to inspect and maintain Highway 528 where the accident took place.  Because of that alleged negligence, Cargile argues that there was a dangerous condition at the site of the accident  which was the sole proximate cause of his injuries and damages.

¶4.     During a non-jury trial, the State of Mississippi was dismissed pursuant to a  motion for a "directed verdict," properly a M.R.C.P. 41(b) motion to dismiss but MDOT was not dismissed.  The trial court entered its findings of act and conclusions of law apportioning 50% fault to Cargile and 50% fault to MDOT.  Judgment was entered in favor of Cargile for $38,151.  MDOT appeals that award.

## DISCUSSION

I.      **DID THE EVIDENCE PROVE A FAULT WITH THE HIGHWAY?**

II.     **DID THE TRIAL COURT ERR IN THE ADMISSION OF THE TESTIMONY OF RANDALL PITTMAN?**

¶5.     Because these issues are closely related, this Court will discuss them concurrently. MDOT contends that the evidence shows that the accident was not caused by its negligence.  Instead, MDOT counters that the causes were Cargile's failure to keep a proper lookout, his truck's speed which was excessive for the conditions, and his failure to keep his vehicle under control.   Further, MDOT advances that Cargile never saw the water which he claims had accumulated.  MDOT insists that the evidence fails to show any fault with the highway.

¶6.     Additionally, MDOT argues that the trial court erred in admitting as evidence the testimony of Randall Pittman, who lives on Highway 528 near the scene of the accident.  Pittman testified to his opinion on the cause of Cargile's accident.  The trial court also heard Pittman testify to his opinion of the causes

2

of other accidents along the same stretch of highway which he either witnessed or heard about. MDOT states that his testimony is irrelevant and has no probative value because of remoteness. MDOT further asserts that since Pittman did not see the accidents along that same stretch of road about which he testified, he did not possess the requisite personal knowledge required for testimony by a lay witness. Additionally, MDOT contends that Pittman had no personal knowledge of the cause of any of those accidents including Cargile's. MDOT further contends that Pittman did not see any such water at the time of the accident.

¶7. Further, MDOT argues that there was no evidence of water accumulation at or near the site of the accident or that any such accumulation caused the accident. MDOT asserts that State Trooper Keith Murphy, the state trooper on the scene of Cargile's accident, did not see any accumulation of water. Finally, MDOT counters that its witnesses, Kenneth Thornton, the MDOT maintenance supervisor, John Lambert, who was Thornton's supervisor, and Trooper Keith Murphy all regularly traveled that road for many months before the accident and had never seen any accumulation of water in that location. They all testified that had they noticed such an accumulation of water, they would have reported it. As evidenced by MDOT maintenance records, MDOT insists that its agents conducted regular, scheduled inspections and maintenance of the highway including grading the shoulders to prevent drainage onto the highway. Thornton testified that if he had seen a shoulder that was higher than the highway, he would have considered that condition an "emergency situation" requiring immediate attention. Thornton and Lambert both testified that there was "pitting" on the pavement but that defect did not warrant repair and would not have caused the accumulation of water alleged by Cargile.

¶8. Cargile states that there is no evidence that he failed to keep a proper look out. He asserts that there was no evidence that he was driving too fast. He claims to have been driving between 40 and 45

3

miles per hour which he says was a safe speed for the conditions.. Cargile points to the lack of evidence that he failed to keep his vehicle under control.

¶9.     Further, Cargile asserts that the trial court properly admitted testimony by Pittman as to the cause of the accident. He argues that Pittman was qualified to testify because he traveled the road several times a day and lived near the scene of the crash. Cargile cites Pittman's testimony of his actions and attempts to notify MDOT of the condition of the road and the previous accidents. Since there were numerous accidents at this location during or immediately after rainfall and since Cargile and Pittman both testified that it was raining at the time of the accident, Cargile argues that a reasonable inference can be drawn that accumulated rainwater was the cause of the accident.

¶10.    In an action under the Tort Claims Act, the trial court sits as the finder of fact. When the court's factual determinations are challenged on appeal, the reviewing court considers the entire record and has an obligation to affirm when the record contains substantial evidence in support of the trial court's findings. *Ezell v. Williams,* 724 So. 2d 396, 397 (Miss. 1998); *Miss. State Hosp. v. Wood*, 823 So. 2d 598, 601 (Miss. Ct. App. 2002).

¶11.    To prevail on a negligence claim, the plaintiff must establish by a preponderance of the evidence each of the elements of negligence: duty, breach, causation and injury. *Leflore County v. Givens*, 754 So. 2d 1223, 1230 (Miss. 2000) ( citing *Lovett v. Bradford*, 676 So. 2d 893, 896 (Miss. 1996)). In Mississippi, a plaintiff may espouse one of three theories in support of a claim of negligence such as this: (1) that the defendant's own negligence created a dangerous condition which caused plaintiff's injury; (2) that the defendant had actual knowledge of the danger she faced as an invitee or (3) that based upon the passage of time, the defendant should have known about the dangerous condition caused by another party and if defendant had acted reasonably, i.e., constructive knowledge of that condition should be imputed

4

to that defendant. ***K-Mart Corp. v. Hardy ex rel. Hardy***, 735 So. 2d 975, 980 (Miss. 1999) (citing ***Downs v. Choo***, 656 So. 2d 84, 86 (Miss. 1995);***Munford, Inc. v. Fleming***, 597 So. 2d 1282, 1284 (Miss. 1992)). The plaintiff bears the burden of presenting significant probative evidence that the defendant was not only negligent, but also that such negligence was the proximate cause of the dangerous condition that resulted in the plaintiff's injury. ***Id.***

¶12.    If proof of a causal connection is to be established by circumstantial evidence, it must be sufficient to make the plaintiff's asserted theory reasonably probable, not merely possible, and it is generally for the trier of fact to say whether circumstantial evidence meets this test. ***Id.*** (citing ***Miss. Valley Gas Co. v. Walker***, 725 So. 2d 139, 145 (Miss. 1998)).

¶13.    In ***Givens***, the plaintiffs maintained that the injuries that they sustained were such that they could not remember the circumstances surrounding the accident nor the accident. ***Givens,*** 754 So. 2d at 1230. The plaintiffs further argued that the county's negligent failure to warn of the dangerous curve was the proximate cause of the accident. ***Id.*** at 1224.   They alleged  that the county designed and maintained that part of the road in a negligent manner and that the county knew of the dangerous condition. ***Id.***   As in the present case, the county failed to take steps to correct the condition despite the fact that it knew or should of known of the numerous accidents occurring at this curve. ***Id.*** at 1225.

¶14.    This  case is similar to ***Givens***.  After consideration of the entire record, this Court affirms the ruling of the trial court.  The trial court, as finder of fact,  had the opportunity to listen to the testimony of the witnesses and evaluate the negligence claim on a first-hand basis.   The trial court chose to accept the testimony of Randall Pittman as to the numerous accidents occurring in the area of  Cargile's accident. MDOT either  knew  or  should  have  known  about  other  accidents  occurring  on  the  roads  it  had

responsibility for maintaining. The trial court properly apportioned 50% fault to Cargile for his own negligence.

¶15. The next evidence to consider is the testimony of both Kenneth Cargile and Randall Pittman. Neither actually saw the accumulation of water on the night of the accident. Neither knew positively the cause of the accident. However, the trial court allowed the testimony as circumstantial evidence of the events on the night of the accident.

¶16. Admission or exclusion of evidence is within the discretion of the trial judge and will not be reversed absent an abuse of that discretion. *Hardy*, 735 So. 2d at 983 (citing *Broadhead v. Bonita Lakes Mall, Ltd. P'ship*, 702 So. 2d 92, 102 (Miss. 1997)(quoting *Sumrall v. Miss. Power Co.* 693 So. 2d 359, 365 (Miss. 1997); *Gen. Motors Corp. v. Jackson*, 636 So. 2d 310, 314 (Miss. 1992); *Walker v. Graham*, 582 So. 2d 431, 432 (Miss. 1991)). For a case to be reversed on error in the admission or exclusion of evidence, the error must result in harm and prejudice or adversely affect a substantial right of a party. *Id.* at 983 (citing *Hansen v. State*, 592 So. 2d 114 (Miss. 1991)).

¶17. A trial judge's findings of fact on conflicting evidence cannot be disturbed by this Court on appeal unless we can say with reasonable certainty that the findings were manifestly wrong and against the overwhelming weight of the evidence. *Id.* at 986-987(citing *Richardson v. Riley*, 355 So. 2d 667, 668 (Miss. 1978)). *See also Puckett v. Stuckey*, 633 So. 2d 978, 983 (Miss. 1993). The reviewing court must examine the entire record and must accept that "evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court's findings of fact." *Id.* at 987 (citing *Cotton v. McConnell*, 435 So. 2d 683, 685 (Miss. 1983); *Culbreath v. Johnson*, 427 So. 2d 705, 707-08 (Miss. 1983)).

That there may be evidence to the contrary is irrelevant. *Id*.; *Hansen v. State*, 592 So. 2d 114 (Miss. 1991)).

¶18.     In *Hardy*, the plaintiff filed an action for injuries received when he  slipped  and fell in paint on the floor at a K-Mart. *Id.* at 977.  He argued  that K-Mart was negligent since  there was a paint can on the floor in the same color as the paint cans on the display right  above where he had fallen.  *Id.* at 978.  He could not independently recall how many levels of paint cans were stacked on the aisle display at the time of his fall.  *Id*.

¶19.     As this Court stated in *Hardy*:

> In determining whether there was sufficient evidence on the question of defendant's negligence for decision of that issue by a jury two well established principles must be kept in mind.  One is that the negligence may be established by circumstantial evidence in the absence of testimony by eyewitnesses provided the circumstances are such as to take the case out of the realm of conjecture and place it within the field of legitimate inference.  **Id.** at 981:

(citing **Downs  v.  Choo**, 656 So. 2d 84, 90 (Miss. 1995)(Sullivan, P.J., dissenting)*;  Moore v. Winn Dixie Stores, Inc*. 252 Miss. 693, 703, 173 So. 2d 603 (1965)(*quoting* **Johnson v. Canton Flying Services, Inc**.  209 Miss. 226, 46 So. 2d 533 (1950)).  The jury  must be able to make a reasonable or reliable inference.  735 So. 2d at 982.   There must be sufficient additional evidence presented, other than the plaintiff's testimony, to lead the  jury to  conclude that the defendant caused the  negligence.. **Id.** at 983. In **Winn Dixie Supermarkets v. Hughes**, 247 Miss. 575, 156 So. 2d 734 (1963),  we stated the factual question of causation is properly for the jury to make. **Id.** at 983.

¶20.     In *Johnson v. City of Pass Christian*, 475 So.2d 428 (Miss. 1985), a motorist lost control of her car, left the road and collided with an object causing her personal injury.  Through the testimony of others, she claimed that a hole in the street caused her to lose control. *Id.* at 429.  This Court upheld a JNOV for the city of a $75,000 jury verdict where photographs in evidence did not show any hole. *Id.*

7

She testified that she did not know what caused her to lose control of her car. *Id.* at 429. The street superintendent testified that the city had worked on the street one month prior to the accident and saw no defect. *Id.* at 430. He also testified that had he seen a hole, he would have repaired it. *Id.*

¶21.     In similar cases where the plaintiff did not remember the scene of the accident, this Court held that when photographs contradict the plaintiff's tenuous theory of an accident, the plaintiff's theory will not support a jury verdict. *Id.* at 431. We stated:

> [t]he Plaintiff's theory of the case...is completely overwhelmed in our opinion by viewing the photographs taken at the scene and the testimony of the witness who arrived immediately after the accident and before the scene was subject to distortion by curious onlookers...The plaintiff's theory at best admits of only a possibility, but it is highly improbable, and the mere possibility of the happening of an event has been held by this Court to be insufficient to sustain a verdict.

*Id.* at 431, (quoting *Gunn v. Grice*, 204 So. 2d 177, 185 (Miss. 1967)).

¶22.     A layperson is qualified to give an opinion if he has firsthand knowledge which other laypeople , i.e.,  the jury, do not have. *Hardy*, 735 So. 2d at 984 (citing *Wells v. State*, 604 So. 2d 271, 278-79 (Miss. 1992)). Speculative testimony is not admissible. *Id.* at 985. Nor is testimony about facts of which the witness has no personal knowledge. *Id.* at 985 (citing *Jones v. State*, 678 So. 2d 707, 710 (Miss. 1996)).

¶23.     A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. M.R.E. 602. Evidence to prove personal knowledge may, but need not consist of the testimony of the witness himself. *Id.* Rule 602 does not prevent, however, the witness from testifying about hearsay statements. M.R.E. 602 cmt. He need only show that he has personal knowledge regarding the making of the statements. *Id.* A witness can testify to facts within his knowledge,

gained through any of his senses. *Perkins v. State*, 290 So. 2d 597, 599 (Miss. 1974). *See also Dennis v. Prisock*, 221 So. 2d 706, 710 (Miss. 1969).

¶24. Further, if the witness is not an expert, his testimony in the form of an opinion or inference is limited to the opinions of inferences which are (a) rationally based on the perception of the witness and (b) helpful to the clear understanding of the testimony or the determination of a facet in issue. M.R.E. 701.[1] Rule 701 is a departure from the traditional rule; it favors the admission of lay opinions when two considerations are met. M.R.E. 701 cmt. The first consideration is the familiar requirement of firsthand knowledge or observation. *Id.* The second consideration is that the witness's opinion must be helpful in resolving the issues. *Id.* Rule 701, thus, provides flexibility when a witness has difficulty in expressing himself in language which does not reflect an opinion. *Id.* Rule 701 is based on the recognition that there is often too thin a line between fact and opinion to determine which is which. *Id.*

¶25. Evidence of other similar accidents or injuries at or near the same place or by use of the same appliance suffered by persons other than the plaintiff and in other and different times, not too remote in time from the particular occurrence, is generally admissible to show the existence of a defective or dangerous condition or appliance and the dangerous character of the place or injury or of the machine or the appliance, and to show the defendant's notice or knowledge thereof. *S.H. Kress & Co. v. Markline*, 177 Miss. 37, 77 So. 858 (1918). Concerning evidence of similar happenings, this Court has stated:

> So far as the occurrence of other accidents at the same place is concerned, as matter of notice to the municipality responsible, there need be no hesitancy about accepting the rule of its admissibility. The objection to it as tending to introduce collateral issues, and thus lead away the jury's attention, is absolutely illogical and is surely foundationless. *** There is no necessity to quote from other authorities that in this class of cases the character of the

---

[1]Effective May 29, 2003, M.R.E. 701 has been amended. However, we cite the version in effect when this case was tried.

place of the accident is one of the subjects of inquiry pertinent both as to notice and as to the condition of the locus in quo, and, if the defendant comes into court saying he is unprepared, the fault lies with himself. He of all others should know the character of the place, it is his charge and duty to know it, and the proposition that testimony with regard to it is part of the res gestae is nearer the law than that the evidence is collateral. The weight of authority is well in favor of the admission of such testimony to support the allegation of knowledge on the part of the defendant. There is a class of decisions in which it is held that, in suits for injuries caused by defective streets, it is relevant for the plaintiff to prove other similar accidents for the purpose of showing the dangerous character of the street. And from what we have said with regard to the relevancy of such testimony in proof of scienter, it will be gathered that we apply the same reasoning to its relevancy in showing the dangerous character of the street.

*Markline*, 77 So. at 862 (quoting Jones' Blue Book of Evidence § 163).

¶26. The trial judge exercised the requisite degree of discretion in admitting the testimony of Cargile and Pittman which drew inferences about the accident and its causes even though neither saw an accumulation of water. This Court may reverse the trial judge only for abuse of discretion. Since there are no eyewitnesses, negligence may be established by circumstantial evidence such as the testimony of Pittman and Cargile. The judge as trier of fact heard the testimony of Pittman and Cargile and chose to believe and credit this testimony in reaching the decision to apportion fault of 50% to MDOT. The trial judge made findings of fact which we cannot say are wrong or incorrect. The inferences were reasonably drawn therefrom.

¶27. Pittman's testimony concerning prior accidents at that location came from his observations of tire tracks and actual accident scenes. His opinion as to the cause of the accident, the accumulation of water at the site, was made from his firsthand knowledge gained from observing the road on which he lived for 25 years. He had a familiarity with the road that the jury did not have. His familiarity came from his experiences driving that portion of the highway.

10

¶28.    Pittman's testimony as to the occurrences of other accidents at the same location was also properly admitted. His testimony proved the dangerous conditions that Cargile apparently faced on the night of the accident.  Also properly admitted was Pittman's testimony regarding the calls that he allegedly made to MDOT that put it on notice of the conditions of that stretch of road when it rained.  Pittman's testimony supports Cargile's allegation of knowledge by MDOT.  It was properly for the trier of fact, that is, the trial judge, to determine the credibility of Pittman's testimony.  We will not disturb that decision absent a showing of abuse of discretion or that the trial judge was manifestly wrong.

### III.    DID THE TRIAL COURT ERR IN FINDING THAT THE MISSISSIPPI DEPARTMENT OF TRANSPORTATION DID NOT HAVE IMMUNITY UNDER MISS. CODE ANN. § 11-46-9?

¶29.    MDOT further challenges the trial court's refusal to find it immune under the Mississippi Tort Claims Act, Miss. Code Ann. §11-46-9.  MDOT contends that the maintenance of Highway 528 was a discretionary function of the MDOT by and through its agent Thornton, who inspected and maintained Highway 528 on a regular scheduled basis and as necessary.   Further, MDOT maintains that, as a governmental entity, MDOT and its employees are not liable when exercising ordinary care.  In finding that MDOT failed to exercise reasonable care in warning the public of a dangerous condition of which it had notice, MDOT contends that the trial court did not consider all of the evidence.  MDOT asserts that the trial court lacked evidence as to the condition of the highway at the time of the accident.  MDOT also cites the trial court's failure to consider the evidence of the regular inspection and  periodic and/or scheduled maintenance of the highway.  Further, MDOT contends that the trial court did not consider MDOT's expertise and discretionary power to take or not take any particular action with respect to highway maintenance even after a citizen request.

11

¶30.    MDOT claims to have exercised reasonable care in maintaining the portion of Highway 528 where the accident took place. MDOT offered the testimony of Thornton who stated that he inspected the road weekly. Thornton testified that the week before the accident his inspection revealed only minor defects which he did not consider dangerous or in need of immediate repair. Finally, MDOT maintains that there was no objection to the evidence that there was a subsequent overlay of this highway because such overlay was not a remedial measure with respect to this accident.

¶31.    Cargile insists that the trial court was correct in ruling that MDOT was not entitled to immunity under Miss. Code Ann. § 11-46-9. He argues that the act was not discretionary and alternatively that immunity was lost when MDOT received notice of the dangerous condition. Cargile cites Miss. Code Ann. § 65-1-65 (Rev. 2001) as providing the ministerial duty of the maintenance of state highways:

> It shall be the duty of the State Highway Commission to have the State Highway Department maintain all highways which have been or which may be hereafter taken over by the State Highway Department for maintenance in such a way as to afford convenient, comfortable, and economic use thereof by the public at all times. To this end it shall be the duty of the director, subject to the rules, regulations and orders of the commission as spread on its minutes, to organize an adequate and continuous patrol for the maintenance, repair, and inspection of all of the state-maintained state highway system, so that said highways may be kept under proper maintenance and repair at all times.

*Id.*

¶32.    The Mississippi Tort Claims Act provides the exclusive remedy for a party injured by a governmental entity's tortious acts or omissions. *City of Tupelo v. Martin,* 747 So. 2d 822, 826 (Miss. 1999). The relevant statute, Miss. Code Ann. § 11-46-7(1)(b), states that "a governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim arising our of any act of omission of an employee of a governmental entity exercising ordinary care in reliance upon, or in the execution" *Id.* Alternatively, Miss. Code Ann. § 11-46-9(1)(q) provides that "a

12

governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim arising out of an injury solely by the effect of weather conditions and the use of streets and highways." *Id.*

¶33.    As before, *Jones v. Mississippi Department of Transportation*, 744 So. 2d 256, 263 (Miss. 1999), aids in our present explanation. The Tort Claims Act does not define "discretion." *Id.* at 259. Prior to abolishment of judicially created sovereign immunity in *Pruett v. City of Rosedale*, 421 So. 2d 1046 (Miss. 1982), this Court used two tests to determine immunity. The governmental/proprietary function test was used to determine whether a municipality was entitled to immunity. *Jones*, 744 So. 2d at 259. In *Parker v. City of Philadelphia*, 725 So. 2d 783, 784 (Miss. 1998), we explained that:

> Under pre *Pruett* common law, whether a city "enjoys the defense of sovereign immunity depends on whether the alleged conduct occurred in the exercise of a governmental function or in the exercise of a proprietary function." *Morgan v. City of Ruleville*, 627 So. 2d 275, 179 (Miss. 1993); *Webb v. Jackson*, 583 So. 2d 846, 952 (Miss. 1991) A city performing a governmental function is immune from a negligence suit, whereas a city performing a proprietary function is not immune from a negligence suit. *Morgan*, 627 So. 2d at 279; *Webb*, 583 So. 2d at 952.

*Parker*, 725 So. 2d at 784 (quoting *Hord v. City of Yazoo City*, 702 So. 2d 121, 123 (Miss. 1997).

¶34.    However, this test is not applicable to the state and its political subdivisions. *Jones*, 744 So. 2d at 259. See *also Stokes v. Kemper County Bd. of Supervisors,* 691 So. 2d 391, 393 (Miss. 1997); *Miss. Transp. Comm'n v. Rector*, 663 So. 2d 601, 602 (Miss. 1995).

¶35.    At common law, this Court utilized the discretionary/ministerial test to determine the immunity status of a governmental employee. *Jones*, 744 So. 2d at 259. Governmental employees are entitled to qualified immunity for discretionary acts. *Id*.    Under *Mohundro v. Alcorn County*, 675 So. 2d 848, 853 (Miss.1996), a duty is ministerial and not discretionary if it is imposed by law and its performance is not

13

dependent on the employee's judgment. *Jones*, 744 So. 2d at 259-60 (citing *Mohundro*, 675 So. 2d at 853; *L.W. v. McComb Separate Mun. Sch. Dist.*, 754 So. 2d 1136 (Miss. 1999). *See also Barrett v. Miller*, 599 So. 2d 559, 567 (Miss. 1992). The classic definition is found in *Poyner v. Gilmore*, 171 Miss. 859, 158 So. 922 (1935), where this Court stated:

> [t]he most important criterion, is that [if] the duty is one which has been positively imposed by law and its performance required at a time and in a manner or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion, the act and discharge thereof is ministerial.

*See Coplin v. Francis*, 631 So. 2d 752, 754 (Miss. 1994) (quoting *Poyner*, 171 Miss. at 865, 158 So. at 923). *See also Barrett v. Miller*, 599 So. 2d at 567; *McFadden v. State*, 542 So. 2d 871, 877 (Miss. 1989); *Region VII, Mental Health-Retardation Ctr. v. Isaac*, 523 So. 2d 1013 (Miss. 1988).

¶36. In *Pruett v. City of Rosedale*, 421 So. 2d 1046 (Miss. 1982), we said that the Legislature has "specifically limited the liability of governmental officials to ministerial functions alone, allowing those state employees to continue their basic policymaking decisions without fear of legal retribution." *Id. See also Givens*, 754 So. 2d at 1223.

¶37. We have further clarified the distinction as by defining it as directly correlated to the grant of immunity from negligent acts or omissions. *State ex rel. Brazeale v. Lewis*, 498 So. 2d 321, 322 (Miss. 1986). The basis for the immunity given to government officials is in the inherent need to promote efficient and timely decision-making without fear of liability. *Id.* This distinction is an integral part of the justice system and works to encourage free participation and hinder fear that goes with risk-taking situations and the exercise of sound judgment *Id.*

14

¶38.    In *Brazeale*, the plaintiff sued a member of the board of supervisors alleging negligent repair and maintenance of a county road for injuries and damages which she alleged were proximately caused by the condition of the road. *Id.* She alleged there were numerous holes, indentations and rough spots along the road creating a hazardous condition that caused her accident. *Id.* at 322. Relevant in the case sub judice, the Court stated that:

> [i]f an individual had a ministerial duty or function to maintain the roads of his district, we recognize that, for various reasons, at least some of the roads may be in a state of disrepair from time to time, particularly because of the lack of funds, which would, of course, require that the main heavily traveled roads receive the supervisor's immediate attention...Certainly making the determination as to which roads should be the better maintained under such conditions would be a discretionary matter with the individual, absent some personal tort committed by him

*Id.* at 323.

¶39.    At common law, prior to the enactment of § 11-46-1(w), upon receipt of notice, a governmental entity had a duty to warn of a dangerous condition. *Jones*, 744 So. 2d at 260 (citing *Coplin*, 631 So. 2d at 755). We have held that even where actions are deemed to be discretionary, rather than ministerial, the question may remain whether the public was afforded adequate warnings of the dangerous condition. *Id.* at 260. Miss Code Ann. §11-46-9 requires the actor to exercise a minimum standard of ordinary care to maintain the statutory shield. *Id.* As in *Jones*, MDOT has a duty to warn of dangerous conditions if given notice, either actual or constructive, of a dangerous condition. 744 So. 2d at 260. MDOT's duty becomes one of ordinary care in warning and/or providing relief from the dangerous condition to those who use the roads. *Id.* As previously stated, immunity for discretionary duties is granted only when ordinary care is used. *See Brewer v. Burdette*, 768 So. 2d 920, 923 (Miss. 2000); *L.W.*, 754 So. 2d at 1142.

15

The government actor's use of ordinary care is a question for the finder of fact. *Brewer*, 768 So. 2d at 923; *L.W.*, 754 So. 2d at 1242.

¶40. In *Brewer* we held that road maintenance and repair are discretionary acts. *Id.* ( citing *Mohundro*, 675 So. 2d at 854). Using all of the relevant facts, the trial court is charged with deciding whether the decision maker used ordinary care. *Id.* at 923 (citing *L.W.*, 754 So. 2d at 1241).

¶41. In *Mohundro*, Dixon, an Alcorn County supervisor, failed to use the requisite ordinary care when performing his job of inspecting and maintaining the county roads. 675 So. 2d at 848. The supervisor personally observed a large washout in the middle of the county road on Sunday. *Id.* at 850. He ordered another county employee to place yellow warning signs on the road to the north and south of the washout. *Id.* The signs were not lit. *Id.* Furthermore, they were scarcely anchored in place. *Id.* Although Dixon was worried that someone might drive into the washout and made several trips to the scene, he took no other action. *Id.* He intended to fix it on Monday. *Id.*

¶42. Mohundro drove his truck into the washout early Monday morning. *Id.* The darkness and rain prevented him from seeing the pit. *Id.* Mohundro suffered catastrophic injuries which rendered him a quadriplegic. *Id.*

¶43. Even though he was aware of the dangerous condition, by the time Mohundro drove into the pit Monday morning Dixon had still made no effort to warn the public. *Id.* at 854. We held that Dixon acted with such gross negligence and/or callous indifference to the safety of the public as a whole his conduct was held to be constructively intentional. *Id.* Dixon was not entitled to immunity. *Id.* at 854 (citing *McFadden v. State*, 542 So. 2d 871 (Miss. 1989)).

16

¶44.    Here, the trial court correctly found MDOT's duty to regularly inspect and maintain Highway 528 to be discretionary.  As previously stated, even where actions are deemed to be discretionary, rather than ministerial, the question in this case was  whether the public was afforded adequate warnings of the dangerous condition.  Miss. Code Ann. §11-46-9 requires MDOT to exercise a minimum standard of ordinary care to maintain the statutory shield.  As in *Jones*,  MDOT has a duty to warn of dangerous conditions if given notice, either actual or constructive,  of a dangerous condition.   MDOT's duty became one of ordinary care in warning and/or providing relief from  the dangerous condition to those who use the roads.   Immunity  for discretionary duties is granted only when ordinary care is used.  See *Brewer v. Burdette*, 768 So. 2d at 920; *L.W.*,  754 So. 2d at  1142.  The government actor's  use of ordinary care is a  question for the finder of fact. *Brewer*, 768 So. 2d  at 923; *L.W*.,  754 So. 2d at 1242.  As a result, the trial judge, as the finder of fact,  was the proper person to decide whether  MDOT  used ordinary care.  The trial court held MDOT to be  partially responsible and apportioned 50% fault to MDOT.  This issue is without merit.

## CONCLUSION

¶45.    For these reasons, the trial court's judgment is affirmed.

¶46.    **AFFIRMED.**

**PITTMAN, C.J., McRAE, P.J., EASLEY, CARLSON AND GRAVES, JJ., CONCUR.  COBB, J., CONCURS IN RESULT ONLY.  WALLER, J., DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**