SOUTHWICK, J., for the Court.
¶ 1. Twenty years ago a timber company brought suit for reimbursement of the price it paid for a warranty timber deed on land in which the grantor did not have the right to sell the timber. The owners of all the interests in the land were joined. An interim decree was entered in 1995 allowing the sale of some of the timber. From the proceeds, repayment of the original consideration for the timber and part of the accumulated interest on that sum was made. A partial summary judgment was entered in March 1996, assessing liability for the purchase price and awarding interest from the date of suit. Reserved were two collateral issues for later resolution.
¶ 2. A final decree was not entered until July 2004. The chancellor denied interest after March 1996 on the part of the debt not satisfied from the timber sale proceeds, denied attorneys’ fees, and also refused to impose a lien on the defendant’s property. We find error in these rulings. Consequently, we reverse and remand for further proceedings.
FACTS
¶ 3. In September 1983, Inez Gordon executed a timber deed to Longleaf Timber Company on two tracts of land in Newton County. Longleaf paid Mrs. Gordon $48,652 for the timber. In a post-conveyance title search, Longleaf discover *983 ed that Mrs. Gordon did not have adequate title. Because of the dispute, no timber was ever cut on either tract pursuant to the 1983 deed. Timber was cut on one tract in about 1995 only as a result of a new contract entered by a special commissioner appointed by the chancellor. This litigation has been an effort by Longleaf and its assignees to be reimbursed the $48,652 purchase price, plus interest and attorneys’ fees.
¶ 4. According to a 1991 stipulation, Mrs. Gordon had only a life estate in one of the two tracts. As to that tract, Mrs. Gordon could not as a life tenant convey any timber rights to others.[1] The timber on the first parcel has not been the subject of court orders in this suit. On the second tract, Mrs. Gordon had a half interest in fee simple and a life estate in the remaining half interest. Longleaf learned that there were title problems with their deed before cutting any timber on the two tracts. Longleaf and the Gordon family entered into negotiations.
¶ 5. In November 1985, Mrs. Gordon conveyed and warranted both tracts to her son, Ralph Gordon, but reserved a life estate. The deed stated that the conveyance was “subject to outstanding timber deeds of record.”
¶ 6. With no resolution through negotiations, Longleaf filed suit on September 18, 1986. Sought was a determination of ownership of the two tracts, an award of money damages and attorneys’ fees, and a lien on Mrs. Gordon’s undivided interest to secure payment of damages.
¶ 7. In March 1995, nine years after the complaint was filed, an agreed interim decree was entered that determined the ownership of the timber on the tract in which Inez Gordon had owned a half interest in fee simple. A special commissioner was named to sell the timber on that tract, and the proceeds were to be paid into court. In August 1995, an agreed order permitted the $123,923.08 received in the timber sale to be disbursed. One half was paid to Curtis Gordon, who in 1994 was assigned Longleafs claims and has replaced that company as plaintiff. The remainder was paid to the other owners. Inez Gordon is now deceased. The defendants are Ralph Gordon as an heir and as executor of her estate, along with the remaindermen of the life estate that Mrs. Gordon owned in the tract that remains in dispute. We will refer to all defendants as “Ralph Gordon.”
¶ 8. In March 1996, the court granted partial summary judgment. Curtis Gordon as Longleafs assignee was awarded the $48,652 that had been paid Inez Gordon in 1983. Also awarded but not quantified was interest that had accrued from the date of the complaint. An ending date for the interest was not indicated. The remaining issues were finally tried eight years later in July 2004. The trial court found that Curtis Gordon was entitled to prejudgment interest at a rate of eight percent per year from the date the complaint was filed until summary judgment was granted, which spanned September 1986 to March 1996. The court denied all interest after that time and denied attorneys’ fees. The court amended the judgment in December 2004 to award $200 in attorneys’ fees.
¶ 9. The court also denied Curtis Gordon a lien on the Ralph Gordon property. Final judgment for $85,627.44 was entered in August 2004. This figure was reduced by a credit of $62,162.46 from timber pro- *984 eeeds previously paid, leaving a balance of $23,464.98 payable by Ralph Gordon.
DISCUSSION
¶ 10. Before delving into the individual issues, we address appellee Ralph Gordon’s failure to file a brief with this Court. An appellee’s failure to file a brief is “tantamount to confession of error,” and we should affirm only if after a review of the record and the appellant’s arguments, we are confident that there was no error. Dethlefs v. Beau Maison Dev. Co., 458 So.2d 714, 717 (Miss.1984). This scale gives more weight to an appellant’s arguments than would usually be allowed. Nonetheless, we must still find error. We do, as will be explained.

Issue 1: Post-Judgment Interest

¶ 11. In the 2004 final judgment, Curtis Gordon was denied interest after March 29, 1996, which was the date of a partial summary judgment, on whatever he was owed that had not been satisfied with the timber proceeds in August 1995. About $62,000 had been paid to Curtis Gordon in 1995. The 1996 judgment held that Curtis Gordon was entitled to reimbursement of the $48,652 paid by Longleaf and prejudgment interest beginning on the date suit was filed in 1986. That 1996 judgment did not calculate a dollar figure for interest. Explicitly retained for later decision was the issue of attorneys’ .fees and implicitly the exact amount of the prior and any further interest.
¶ 12. A determination of the amount of interest to be paid was made for the first time in the 2004 final judgment. It calculated that the original award plus interest from 1986 through the date of the 1996 judgment would total about $85,000. The balance of this amount that was not paid in 1996 was therefore about $23,000 and has been owing since that time.
¶ 13. The interest to be awarded, if any, on that $23,000 beginning on March 29,1996, is one of the issues given us on this appeal. The complaint sought interest beginning on the date of the 1983 timber deed. Interest on a contract debt can be calculated under Mississippi Code Section 75-17-1 (Supp.2005). That section provides that the “legal rate of interest on all ... contracts shall be eight percent (8%) per annum, calculated according to the actuarial method.... ” Id. That statute is often the authority used for setting prejudgment interest when the claim is under a contract or instrument such as a deed. Estate of Baxter v. Shaw Assoc., Inc., 797 So.2d 396, 404 (Miss.Ct.App.2001). The timber deed constituted a contract between Inez Gordon and Longleaf, in which Mrs. Gordon incorrectly represented that she had the right to convey the timber. Discretion to permit prejudgment interest in a breach of contract suit is with the trial judge, at least when the contract does not itself provide a rate of interest. Warwick v. Matheney, 603 So.2d 330, 341-42 (Miss.1992); see also Sunburst Bank v. Keith, 648 So.2d 1147, 1152-53 (Miss.1995) (prejudgment interest proper absent bona fide dispute as to the amount of damages or liability).
¶ 14. Under Section 75-17-1, interest from the date of the breach until judgment may at the discretion of the trial judge be awarded. Here, there was an interest award from the date of filing suit until an interim judgment; thereafter, interest was denied. Neither party seeks reversal of the award of interest through March 1996. We therefore neither discuss nor disturb that award.
¶ 15. In determining whether there was error in denying interest after the date of the partial summary judgment in 1996, we must first decide whether that is the kind of judgment to which the post-judgment *985 interest statute applies. The final judgment was in 2004, but the chancellor referred to the litigation period until 1996 as “prejudgment” and that afterwards as “post-judgment.” Words can mean different things in different contexts. The context for us is whether the partial summary-judgment was a “judgment” as meant in the statute regarding interest on judgments. Miss.Code Ann. § 75-17-7 (Rev. 2000). A 1989 amendment extends the statute’s reach back to the commencement of litigation, but that change applies only to causes of action that accrued after June 30, 1989. Id., Editor’s Note (citing 1989 Miss. Laws. Ch. 311, § 7).
¶ 16. This is the provision that controls interest on a “judgment” in the present litigation:
Ail judgments and decrees founded on any contract shall bear interest at the same rate as the contract evidencing the debt on which the judgment or decree was rendered. All other judgments and decrees shall bear interest at the rate of eight percentum (8%) per annum.
1975 Miss. Laws ch. 336, § 1, amending Miss.Code Ann. § 75-17-7. There was no interest rate stated in the timber deed, so all judgments in this case would bear interest at eight percent.
¶ 17. In deciding if the partial summary judgment was a “judgment [or] decree” to which this statute applies, we find useful the distinction that has been found in this statute between verdicts and judgments. No interest was required simply because of a jury verdict. If a long delay occurred after verdict and before judgment, interest under the former version of this statute was applied at the date of an actual judgment. Grice v. Central Elec. Power Ass’n, 230 Miss. 437, 457-58, 96 So.2d 909, 911 (1957) (describing precedent that reversed trial court’s grant to defendant of a judgment notwithstanding the verdict; interest should have been allowed only as of the date of the Supreme Court’s judgment upholding the verdict, as no trial court judgment awarding money existed).
¶ 18. A judgment in the most general sense is a judicial act that establishes rights and liabilities to the extent possible in a particular suit. Gill v. Jones, 57 Miss. 367, 370 (1879). Orders, opinions, verdicts, and other declarations in a trial court are the building blocks for a judgment. We will not engage in further discussion of general labels because they often mislead: for example, there are in the judicial parlance “final orders” and “interim judgments.”
¶ 19. The statutory language that we apply does not use a modifying word such as “final” to limit the kinds of judgments to which interest applied. Miss. Code Ann. § 75-17-7. For purposes of the Rules of Civil Procedure, a “judgment” includes a chancellor’s decree “and any other order from which an appeal lies.” M.R.C.P. 54(a). Under the terminology of the rules, a “judgment” is something that can be appealed. A partial summary judgment would not be a Rule 54 “judgment” unless specifically certified as one under Rule 54(b), but that does not answer whether it would be a Section 75-17-7 “judgment.” The statute regarding interest on judgments far predates the adoption of the Rules of Civil Procedure in 1981. The same term in each may serve somewhat different purposes. Rule 54 is seeking to force the use of the word only to appeal-able matters; Section 75-17-7 was using the word to determine what awards of money would earn interest.
¶ 20. Orders of a court are subject to revision until a final judgment is entered. M.R.C.P. 54(b). Even a final judgment is subject for a limited time to modification under procedural rules. See *986 M.R.C.P. 59 & 60. Therefore, the fact that this partial summary judgment was not final is simply an explicit example of the constant though time-limited right to change all judgments. Subject to the right to amend, the entry of a partial judgment constitutes the judge’s final decision on some of the issues in a case, reserving remaining issues for later disposition. A judgment that determines the amount of damages to be paid even when the resolution of other issues will occur at a later time has definitively set at least part of the financial liability in the case. The fixed amount will be constantly diminishing in value as the case continues in the trial court unless interest is awarded.
¶ 21. The literal language and clear purposes of the prior version of Section 75-17-7 convince us that a partial summary judgment has the requisite formalities and relative finality to make it the kind of judgment on which interest was to be awarded.
¶22. Though the issue was not analyzed and the case is thus of limited prece-dential value, it is of moment that the Supreme Court required a defendant to pay interest beginning on the date of a partial summary judgment that had awarded actual damages but reserved punitive damages issues. Mississippi State Bar v. Nichols, 562 So.2d 1285, 1288 (Miss.1990). The partial and final judgments in the case were entered prior to the 1989 amendment to Section 75-17-7. Id. at 1287.
¶23. Having found the 1996 partial summary judgment to be a Section 75-17-7 “judgment,” we apply the statute applicable to causes of action that arose when this one did in 1983: “All other judgments and decrees [in which a contract rate is not provided] shall bear interest at the rate of eight percentum (8%) per annum.” 1975 Miss. Laws ch. 336, § 1. The failure to award interest on the 2004 final judgment is not properly labeled an abuse of discretion. Instead, since the 1975 law applied, refusal was a violation of statutory mandate. Brand v. Brand, 482 So.2d 236, 237-38 (Miss.1986) (refusal to award interest on judgment was reversible error). The amount unpaid at the time of the March 29, 1996 partial summary judgment shall bear eight percent interest from that date.

Issue 2: Attorneys’ fees

¶ 24. The plaintiff claimed attorneys’ fees. The trial court essentially awarded none, giving $200. The plaintiff asked to present evidence on reasonable fees, which the chancellor stated would be admitted, but the chancellor also indicated that he was not going to increase the award.
¶ 25. Our first question is on what basis fees could be awarded, since the usual rule is that parties pay their own fees unless an exception applies. Miller, Attorneys’ Fees § 8:1, in 1 Jackson & MilleR, Encyclopedia op Miss. Law (2001). The complaint was entitled “Complaint for Breach of Warranty” and for certain relief. Attorneys’ fees were requested. An entitlement to fees was therefore presented as a component of a breach of warranty under the timber deed. The deed itself does not mention attorneys’ fees.
¶ 26. Among the exceptions to the usual rules on attorneys’ fees has been when there is a failure of one of the five covenants implied in a warranty deed. Id. at § 8:59 (citing Howard v. Clanton, 481 So.2d 272 (Miss.1985)). The Supreme Court has held that attorneys’ fees are proper when there is a failure of warranty in a timber deed. Greenlee v. Mitchell, 607 So.2d 97, 109 (Miss.1992) (citing Miss. Code Ann. § 89-1-33 (Rev.1999); Howard, 481 So.2d at 275). A plaintiff is entitled to *987 reasonable attorneys’ fees, not to exceed the purchase price. Id.
¶ 27. This is a proper case for an award of actual attorneys’ fees and not of just a token amount. Among the issues on appeal is that the chancellor after announcing an award of $200 in fees rejected the relevance of evidence or argument. The amount of a reasonable fee is a discretionary matter based on evidence. Reasonableness includes equitable considerations such as the fact that twenty-plus years of litigation (with long dormant periods) arose from the failure of the original plaintiff Longleaf to check title before entering a timber deed. Perhaps it was a cost-cutting lack of diligence that led to Longleaf s contracting with Inez Gordon in the first place.
¶ 28. We reverse the present attorneys’ fee award. On remand, evidence should be taken on the issue of attorneys’ fees and an award made consistently with the controlling law.

Issue 3: Lien

¶ 29. The plaintiff in the complaint sought a lien on Inez Gordon’s undivided interest in the property covered by the timber deed. Inez Gordon conveyed her interest in the property to Ralph Gordon in 1985, prior to suit being filed in 1986. No lis pendens was then of record. At the 2004 hearing, the plaintiff modified the request for a lien because of the changes in ownership. A lien on Ralph Gordon’s interest in this same property was the new request. The chancellor used the fact that the conveyance from Inez to Ralph Gordon occurred before filing of suit as the basis to determine that the interest that Ralph Gordon received was free of the claims later brought by the plaintiffs.
¶ 30. By statute, a lis pendens notice is required in real estate suits “unless the claim be founded upon an instrument which is recorded,” an exception arising from the fact that the recorded instrument constitutes notice of the interest. Miss. Code Ann. § 11-47-3 (Rev.2002) (emphasis added). This claim is based on a recorded timber deed, which was referenced in the deed from Inez Gordon to Ralph Gordon. More importantly, Ralph Gordon had actual notice of Longleaf s claims of a failure in the timber warranty prior to his deed from Inez Gordon. The failure to have notice filed in the lis pendens record affects only “bona fide purchasers or incumbrancers” of the real estate, not those with actual notice of the claim. Miss. Code Ann. § 11— 47-9 (Rev.2002).
¶ 31. Regardless of the lis pendens issues, a judgment constitutes a lien on all of a defendant’s property once that judgment is enrolled. Miss.Code Ann. §§ 11-7-191 and 11-7-197 (Rev.2002). Therefore a successful plaintiff is entitled at least to the judgment lien. If the trial judge was seeking to deny that lien also, that too was error.
¶ 32. We reverse and order that a lien on Ralph Gordon’s property be imposed.
¶ 33. THE JUDGMENT OF THE CHANCERY COURT OF NEWTON COUNTY IS REVERSED AND THE CAUSE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
LEE, P.J., GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. KING, C. J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY MYERS, P.J., AND CHANDLER, J. IRVING, J., NOT PARTICIPATING.

. A life tenant may cut timber only for her own needs, such as for firewood, fencing, fuel, and necessary structures. Chapman v. Thornhill, 802 So.2d 149, 153 (Miss.Ct.App.2001).